OPINION OF THE COURT
Joseph Goldstein, J.
The defendant is charged with having violated subdivision (d) of section 1180 of the Vehicle and Traffic Law in that, on November 29, 1980, it is alleged that he was traveling at a rate of 73 miles per hour on the Long Island Expressway in violation of the stated speed limit of 55 miles per hour.
The police officer testified that he was operating a police department vehicle which, among other things, contained a radar device with an antenna affixed to the rear side window of the car and the electronic console affixed to the forward part of the vehicle within his view. The officer further testified that he followed the defendant’s vehicle, “pacing him”, and subsequently directed the defendant to pull to the side of the road at which time the defendant was handed a simplified traffic information, charging him with speeding.
While this fact pattern does not appear unusual on its face, it raises a point of law which apparently is one of first impression in this State. The officer testified that, after getting behind the defendant’s vehicle and maintaining his *730 distance from that vehicle, he then placed the radar device in a “verify mode”. The officer testified that upon his doing this, the console indicated a speed which the police officer claims was the speed of his own moving police car and this was so, notwithstanding the fact that the radar antenna pointed out of the rear side window and had within its zone of influence moving scenery and perhaps other moving vehicles.
The officer acknowledged that while he had the usual training that officers of the Nassau County Police Department are provided, as well as several years’ experience in highway motor patrol, he was not a scientific expert and could not explain the technical aspects of the operation of the radar device while it was used in a moving police car.
The facts of this case present this court with a most interesting question and one of first impression in this State: can a radar speedmeter, a device traditionally used — and judicially accepted in this State as reliable if properly tested — in a stationary mode, be used to determine the speed of a moving patrol car relative to the scenery it is passing?
Radar, a device on which research was begun in the United States as early as 1922 and which was refined during World War II, was not recognized in New York State as a proper means of detecting the speed of motor vehicles until 1958 (People v Magri, 3 NY2d 562). Until the Magri decision, in each case of an alleged speed violation that had been detected by a radar device, it was necessary to produce expert testimony as to the nature, function and scientific principles underlying radar speedmeters so that its reliability as a speed-measuring device could be determined.
In the Magri case, the patrol car was parked on the parkway’s divider and the stationary radar unit measured the speed of the defendant’s vehicle as it passed through the radar’s beam. The Magri court took judicial notice of the application of the Doppler effect as a reliable means of measuring the speed of motor vehicles passing through the beam of a statutory radar unit used in a stationary mode (emphasis supplied by this court). Today, in light oí Magri, *731 where a speed violator has been detected by a stationary radar unit, it is only necessary for the People to establish the reliability of the particular radar unit involved. The instant case is distinguishable from Magri. This case is not one of a moving vehicle passing through a radar beam emitted from a stationary source, but rather involves a moving radar unit emitting a beam that purportedly was reflecting back from the scenery or the roadway over which the patrol car was passing.
Officer Vonnes testified that he had tested the MR-9 radar unit he was using and found it to be accurate. However, the tests were performed while the radar unit was statutory. He further testified that if the police vehicle was moving while the unit was being operated, it would have no effect on the accuracy or the reliability of the unit and there would be no additional tests to be performed on the unit if it was to be operated in a moving police car. Officer Vonnes, though, is a police officer who is qualified in the use of radar but is not an expert as to the principles underlying radar speedmeters or the principles of the use of this radar unit as it moves along the roadway. There was no expert testimony as to whether the radar antenna was measuring speed by reflection of passing scenery or the roadway, nor was the police officer sufficiently expert to explain the scientific principles involved.
In a case involving another speed-measuring device, the court held that although Vascar speed-measuring devices are widely used within New York State and other States, “its operation and accuracy are still not a matter of such general knowledge as to eliminate the need for any proof of those facts” (People v Leatherbarrow, 69 Misc 2d 563, 566). The Leatherbarrow court proceeded to state that until the Vascar devices are legislatively or judicially accepted and their reliability is thereby established, the burden is on the People to demonstrate the accuracy of such a device.
This court at this time will not take judicial notice of the reliability of the MR-9 radar in a “moving” or “verify” mode. The courts of this State have not yet passed upon the reliability of this new application of the Doppler effect, and the prosecutor, who had the opportunity, failed to demonstrate the principle as well as the reliability of the MR-9 *732 radar unit as it was used while the police car itself was in motion. The police officer’s testimony is insufficient to establish the reliability of the use of radar devices for measuring the speed of a “pace” car relative to the scenery that it passes. Without expert testimony to corroborate the police officer’s testimony as to the accuracy and reliability of a radar unit to so measure speed, this court finds that there is insufficient evidence for a conviction for speeding without a showing of some more traditional grounds for conviction for speeding violations.
Until the New York courts are presented with expert testimony that establishes the accuracy, reliability, effect of the Doppler principle and principles of moving radar, this court will not grant the prosecutor’s requests that the court take judicial notice of the use of the MR-9 in a “moving” or “verifying” mode. At such time that the People do take advantage of the opportunities available to them to establish that radar, while in a moving police vehicle, is both a reliable and accurate speed-measuring device, it is this court’s belief that consideration must be given to the following principles. As stated by the Wisconsin Supreme Court, in such cases,
“[A] prima facie presumption of accuracy sufficient to support a speeding conviction will be accorded to moving radar upon testimony by a competent, operating police officer that:
“1. The officer operating the device has adequate training and experience in its operation.
“2. That the radar device was in proper working condition at the time of the arrest. This will be established by proof that suggested methods of testing the proper functioning of the device were followed.
“3. That the device was used in an area where road conditions are such that there is a minimum possibility of distortion.
“4. That the input speed of the patrol car must be verified, this being especially important where there is a reasonable dispute that road conditions may have distorted the accuracy of the reading (i.e., presence of large trucks, congested traffic and the roadside being heavily covered with trees and signs).
*733 “5. ‘That the speed meter should be expertly tested within a reasonable proximity following the arrest and that such testing be done by means which do not rely on the radar device’s own internal calibrations.” (State v Hanson, 85 Wis 2d 233, 245.)
These requirements as established by the Wisconsin court are necessary to assure both the courts and motorists of the accuracy of the moving radar speedmeter. This court strongly believes that for the average law-abiding citizen whose only contact with the judicial system might be a traffic violation, it is necessary to display the fairness of the judicial system. “Public confidence rests upon the fairness of such proceedings” (State v Hanson, supra, p 246).
Therefore, until it is demonstrated to the courts of this State that MR-9 moving radars are accurate under these conditions, this court will not take judicial notice of the MR-9’s reliability and accuracy in determining the speed of a moving patrol car in which it is mounted.
Even though the radar verification of the “pace” car’s speed has been found to be insufficient to sustain a conviction for a speed violation, a conviction may still be had if other, more traditional facts are available and testified to. There was sufficient testimony as to the accuracy of the speedometer in Officer Vonnes’ car which had been calibrated in Officer Vonnes’ presence. There was also testimony that Officer Vonnes “paced” the defendant while maintaining a constant speed and distance, thereby leading to the conclusion that Officer Vonnes’ speedometer was reporting the speed at which both the patrol car and the defendant’s were traveling. Furthermore, there was testimony that Officer Vonnes had training and experience in estimating the speed of moving vehicles.
In People v Heyser (2 NY2d 390, 394) the court held that the reading of an untested speedometer together with an estimate by a patrolman who has had experience in estimating the speed of moving cars is sufficient to sustain a conviction for speeding. In the instant case there was not only testimony that Officer Vonnes had training and experience in estimating the speed of moving automobiles, but there was also testimony that his speedometer had been *734 tested in his presence. A fortiori the grounds for conviction set forth in Heyser have been more than satisfied.
Accordingly, the defendant is found to be guilty of violating subdivision (d) of section 1180 of the Vehicle and Traffic Law by having traveled at a rate of speed in excess of a 55 mile-per-hour limit established by the Legislature, and the defendant is directed to appear before the Clerk of the Traffic Court within 60 days from the date of this decision and pay a fine of $20.