Froessel, J.
Traveling eastbound on the Southern State Parkway on the afternoon of August 1, 1956, defendant drove his automobile through a radar beam, the speedmeter connected therewith registering 53 miles per hour. Since the speed limit on the parkway as fixed by Long Island State Park Commission Ordinance No. 6 (§ 6; N. Y. Off. Comp, of Codes, Rules & Regulations, 4th Cum. Supp., p. 548) was 40 m.p.h., defendant was given a summons for speeding. He was subsequently tried, found guilty and fined $10 in the District Court of Nassau County. His conviction was affirmed by the Nassau County Court. He offered no testimony in his defense.
At the trial, the People’s witnesses were Officers Judge and Mulvey, members of the State Park Police Radar Squad Patrol. Both of these officers had been previously instructed in the operation of the radar equipment used by the State Park Police at a. school in Connecticut as well as at one connected with the Police Department. Each had also served on radar patrol duty for five years.
The evidence showed that at the time of the violation, Officer Judge was operating the radar unit from the radar car which was parked on the grass divider of the parkway, while Mulvey was in the so-called “ chase car ” 800 to 1,000 feet ahead of him. The radar unit is composed of three parts — a transmitter-receiver placed on a tripod behind the car, a speedmeter set on the backrest of the seat, and a graph. The operator sits in the back of the car looking out of the rear window with the speed-meter in his line of vision and the graph set on a platform alongside the door within the car. As each car passes through the radar beam emitted by the transmitter, its speed appears on the speedmeter and a permanent record of the speed is made on the graph.
On the day in question, the radar apparatus was tested for accuracy by running the chase car on two separate occasions through the beam, comparing the speed shown on its speedometer with the results on the graph, and recording the tests on the graph and the worksheet; and by striking a sounding fork, which is set by the manufacturer at 50 m.p.h., in front of the transmitter-receiver both before and after the violation. *565 The results of these tests, however, do not appear adequately in the record.
At 2:20 p.m. on August 1st, Officer Judge observed defendant’s car coming; towards the radar ear. After the car passed through the radar beam, Judge noted that the graph recorded defendant’s speed as 53 m.p.h. He telephoned a description of the vehicle to Mulvey in the chase car ahead, and Mulvey flagged defendant down and issued the summons. In addition to radar evidence of the violation, both Mulvey and Judge—who had been operating motor vehicles for 14 and 25 years respectively— testified, on the basis of their experience in observing speed, that in their opinion, independently of the speed shown by radar, defendant was traveling better than 50 m.p.h.
Defendant says on this appeal that the admission of evidence of the radar graph was improper and prejudicial, since no expert was introduced to testify as to the “ operating principle ” of this particular radar device, nor was there evidence of its accuracy by proper testing and operation at the time of the violation. Defendant does not contend that radar evidence as such may not be used to obtain a speed conviction.
The basic operating principles of the radar speedmeter may be briefly stated. It consists of a transmitting and receiving unit which sends out the radar beam and receives the impulse from the moving vehicle. The wave from the transmitting antenna is sent but on one frequency, and because of the speed of the approaching vehicle the deflected wave returns on a different and higher frequency. It is then translated into miles per hour by the electric speedmeter, which measures the difference in the frequencies of the transmitted wave and the received wave (1 Underhill’s Criminal Evidence [5th ed.], § 154, p. 280; 49 A. L. R. 2d 469, 470; Kopper, The Scientific Reliability of Radar Speedmeters, 33 N. C. L. Rev. 343 [1955]; Baer, Radar Does to Court, 33 N. C. L. Rev. 355 [1955]; People v. Nasella, 3 Misc 2d 418; People v. Sachs, 1 Misc 2d 148; People v. Sarver, 205 Misc. 523; State v. Dantonio, 18 N. J. 570).
After reviewing the foregoing as well as other authorities hereinafter referred to, we are of the opinion that the application of radar to speed detection has passed beyond the trial stage. The widespread and successful use of radar in the armed services as well as on ships and aircraft and in airports is common knowledge. The speedmeter device which operates on principles similar to the radar methods relied upon by these *566 agencies is now used by law enforcement authorities in some 43 States, the District of Columbia, and Hawaii (1 Underhill’s Criminal Evidence [5th ed.], § 154; State v. Dantonio, supra, pp. 578-579; 49 A. L. R. 2d 470).
Although our court has never passed upon the use of radar in speed detection, this question has been carefully considered by several of our lower courts, as well as by appellate courts in other jurisdictions, by text writers and in law review articles. We think the time has come when we may recognize the general reliability of the radar speedmeter as a device for measuring the speed of a moving vehicle, and that it will no longer be necessary to require expert testimony in each case as to the nature, function or scientific principles underlying it (Wood-bridge, Radar in the Courts, 40 Va. L. Rev. 809, 814 [1954]; People v. Nasella, supra, p. 425; see, also, People v. Sachs, supra; People v. Sarver, supra; People v. Katz, 205 Misc. 522; State v. Dantonio, supra; Baer, Radar Goes to Court, supra, p. 381; see, generally, Peterson v. State, 163 Neb. 669; Dietze v. State, 162 Neb. 80; State v. Ryan, 48 Wn. [2d] 304).
Almost daily, reproductions by photography (once questioned, see Cowley v. People, 83 N. Y. 464 [1881]), X rays, electroencephalograms, electrocardiograms, speedometer readings, time by watches and clocks, identity by fingerprinting, and ballistic evidence, among a variety of kindred scientific methods, are freely accepted in our courts for their general reliability, without the necessity of offering expert testimony as to the scientific principles underlying them. The use of radar for speed detection may now be said to fall in this category.
As to its operation, the evidence was adequate. The two police officers were sufficiently qualified in that respect by their training at the Connecticut and Police Department schools and by five years of experience with radar patrol duty. Officer Judge testified as to how the device was set up, checking its levelness by a liquid indicator, and how it operates.
A more serious question is presented as to whether the radar device was properly tested and thus recorded accurately after it had been set up at or about the time of the alleged violation. While there is evidence of four tests made here in reasonably close proximity to the time of the violation, we agree with the court below that their results were not properly established in the record. Were the only evidence here that of the untested radar equipment, we would hold, as in the case of an untested *567 automobile speedometer (People v. Heyser, 2 N Y 2d 390, 393), that such evidence is insufficient to sustain a conviction for speeding.
But there is in this case, as in the Hey ser case, additional evidence. We have the testimony of the two qualified and experienced police officers, who had adequate opportunity to observe defendant’s vehicle as it approached the radar car, passed through the radar beam and continued on for another 800 or 1,000 feet, and who independently formed opinions as to its excessive speed.
Defendant’s further argument (based on Vehicle and Traffic Law, § 56, subd. 3) that the opinion testimony of the two officers was insufficient, since they did not observe his car for one quarter of a mile, is without merit. Here, the defendant was not charged with a violation of that statute but of a section of Long Island State Park Commission Ordinance No. 6 which has no distance requirement (People v. Love, 306 N. Y. 18, 26; People v. Mangini, 194 Misc. 615).
Thus the radar speedmeter may in this case be regarded as the untested speedometer in the Heyser case (supra) and, when taken together with the corroborative testimony as to speed given by the two police officers, and accepted by the trial court, the evidence is sufficient to sustain the conviction.
Accordingly, the judgment affirming the judgment of conviction should be affirmed.
Chief Judge Conway and Judges Desmond, Dye, Fuld, Van Voorhis and Burke concur.
Judgment affirmed.