STATE OF CONNECTICUT *v.* JOSEPH LENZEN

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 2-7223

Argued June 15—decided November 28, 1962

*Clement F. Naples,* with whom was *J. Peter La-Chance,* both of Bridgeport, for the appellant (defendant).

*George J. Ferrio, Jr.,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J. In a trial to the jury, the defendant was convicted of speeding. In his appeal, he has assigned error in the admission of certain evidence, in the denial of his motion to strike out certain evidence which the court had admitted, and in the denial of his motion to dismiss the information. The denial of a motion to dismiss a criminal information has been repeatedly held to be not assignable as error, and this assignment was properly abandoned. Maltbie, Conn. App. Proc. § 212.

The essential contention of the defendant is that the state failed to lay a sufficient foundation for the introduction of evidence of the speed at which it is alleged he was traveling. The only witness was a state trooper who testified for the state. The state offered certain evidence for the purpose of demonstrating that the radar device was functioning properly, and thus claimed to have laid a foundation for the admission of the evidence of the alleged speed of the defendant's car. The evidence so offered concerned the use of tuning forks and the running of a test car through the radar zone. The defendant contends that such evidence was inadmissible on two

grounds: (1) The state failed to produce evidence that the tuning forks had been tested within a reasonable time prior to their use on the day in question. (2) The state failed to produce in each instance the graph recording the results from the use of said tuning forks and the alleged speed of the test car. The defendant claims that the best evidence rule required the introduction of those graphs. Parenthetically, it may be added, the graph indicating the claimed speed of the defendant's car was laid in evidence.

Since no finding of facts was required and none was made, we examine the evidence to ascertain the factual background. The court was entitled to find the following facts, relevant to the claimed errors. The radar set, when purchased in June, 1961, included three tuning forks. These forks had a recorded serial number, when they came from the manufacturer, which was kept with each set. Each fork had a number stamped on it, viz., 40, 60 and 80, and each had been tested for accuracy by the manufacturer. Each fork was so made that when it was activated by being struck on a solid object it set up frequency vibrations corresponding to speed in terms of miles per hour. The number stamped on each fork purported to represent the miles-per-hour frequency vibration of that fork. When a fork is so activated and placed in front of the radar antenna, its vibration enters the radar receiver and is indicated on a visual meter and also recorded on a graph in terms of miles per hour. Both the visual meter and the graph are component parts of the radar device, each receiving its motivation energy from the same source. The dial on the visual meter resembles a speedometer and contains numbers from 0 to 100 and a needle which remains at 0 until placed in motion by such activation. When the device is functioning properly and activated by a fork,

the needle moves to a number identical with the number stamped on the fork. The graph instrument contains a spring mechanism which runs paper through it and a pen which reacts in much the same manner as the needle of the visual meter but in addition leaves a permanent impression. The paper contains seventy-five horizontal lines, the bottom line being numbered 0 and the top line being numbered 150. Each line above 0 represents a speed which is two miles per hour more than the speed represented by the line immediately below. The pen remains at 0, except that when it is working properly and activated by a fork it moves to the number identical with the number stamped on the fork.

On the day in question, January 21, 1962, the radar device was set up on the Merritt Parkway in the town of Trumbull. It was plugged into the cigarette lighter of a state police car and received its operating power from the battery and generator of the car. After a short warm-up period for the device, each tuning fork was activated and placed in front of the radar antenna. Each fork so placed indicated a speed both on the visual meter and simultaneously on the graph of the identical number stamped on the fork, viz., 40, 60 and 80. The same tests were made later the same day before the radar device was dismantled, and the results at that time were identical with the prior results. In addition, a test car was run through the radar zone at a speed of 60 miles per hour shortly after the radar device was set up, and the visual meter and graph indicated 60 miles per hour. The speedometer of the test car had been calibrated or tested by the witness within four months prior to the day in question. The witness had spent a day at the factory where the radar device was manufactured, and at that time some of the points of radar were explained to

him. In addition, he had been engaged in radar detection duty since April 20, 1961, and had used the tuning forks in question for their designed purpose on at least two days each week since June, 1961.

In this case, it is not necessary that the court resort to the rule that judicial knowledge may be taken of the accuracy of radar as a device for measuring speed of moving vehicles, as held in cases such as *People* v. *Magri,* 3 N.Y.2d 562; *State* v. *Graham,* 322 S.W.2d 188 (Mo. App.); and *Everight* v. *Little Rock,* 230 Ark. 695. See Richardson, Modern Scientific Evidence § 9.2. The cases of *State* v. *Dantonio,* 18 N.J. 570, *People* v. *Sachs,* 1 Misc. 2d 148 (N.Y.), *State* v. *Johnson,* 23 Misc. 2d 11 (N.Y.), and *East Cleveland* v. *Ferell,* 168 Ohio St. 298, cited by the defendant, are not determinative of the present question, since they do not involve tuning fork tests. In *People* v. *Magri,* supra, a sounding fork was used in testing the accuracy of the radar device, but the efficacy of such testing was not an issue. In practically all cases cited by the defendant, the testing method consisted of running a test car or motorcycle through the radar zone, and such a method was not held to be improper. See *Dietze* v. *State,* 162 Neb. 80. In the instant case a test car was used, and its speed was identical with that indicated on both the visual indicator and the graph. Furthermore, the tuning fork tests resulted in identical readings. The fact that not one but three forks were used goes far to indicate that the forks as well as the radar device were functioning properly.

The rule is well established that the preliminary inquiry into the circumstances surrounding certain evidence to be offered is one of fact for the legal discretion of the trial court, and its decision will not be disturbed except for an abuse of that discretion. See *State* v. *Lorain,* 141 Conn. 694, 699. It is

elementary that the state is not required in a criminal prosecution to establish an essential element beyond a possible doubt but only beyond a reasonable doubt. *State* v. *Foord,* 142 Conn. 285, 295. The mere academic possibility of error would not render evidence such as that in question inadmissible but would, at most, affect the weight to be accorded it by the jury. See *State* v. *Damoorgian,* 53 N.J. Super. 108. Any infirmity which might possibly attach to the evidence could be exposed on cross-examination and rebuttal. We conclude that the court was not in error in admitting the evidence.

The defendant also claims that the admission in evidence of the speeds indicated on the visual indicator in testing the radar device, without first producing the graph recordings showing those speeds, was harmful error. He contends that the best evidence rule applies and that the graph, being primary evidence, must be introduced before testimony concerning the visual observation can be received. The best evidence rule is an elementary principle of law and requires no discussion by us. The problem, if any, generally arises in the application of the rule. "It only comprehends a situation where the evidence offered is clearly substitutionary in its nature although directed to the same issue as the original evidence which is withheld." 20 Am. Jur. 364, Evidence, § 403. The rule would not prohibit a witness from testifying to what he observed on a visual mechanical indicating device, even though the indication was mechanically reduced to writing on a graph at the same time by the device. "Oral testimony of a fact in issue may be primary evidence of the fact although there is also written evidence of the same fact, as where the essential fact to be proved is neither the existence nor the contents of the writing, but some independent fact to which the writing is merely collateral or

incidental." 20 Am. Jur. 366, Evidence, § 405. The graph recording was a confirmation of what the witness visually observed. In such an instance, greater sanctity does not attach to the confirmatory evidence merely because it is in writing. "When the fact as to which evidence is sought to be adduced is one that may have been observed by a witness, then his testimony regarding what he has seen or heard is primary evidence, regardless of whether such fact is reduced to writing and incorporated in a record or document because the witness testifies, not as to what the writing contains, but as to what he observed." 2 Wharton, Criminal Evidence (12th Ed.) p. 501. The court was not in error in admitting the evidence.

There is no error.

In this opinion PRUYN and KINMONTH, Js., concurred.