OPINION OF THE COURT
Alexander, J.
In People v Magri (3 NY2d 562), we recognized the general reliability of stationary traffic radar as an instrument for measuring the speed of a moving vehicle, and held such radar evidence admissible without the need for expert testimony explaining the underlying scientific principles of traffic radar. Today, we are called upon to decide whether such expert testimony is a prerequisite to the admissibility of radar evidence against defendant, where the evidence was derived from a radar device that was moving at the time it recorded the speed of defendant’s vehicle. Notwithstanding that the accuracy of "moving” radar implicates several variables not relevant to the accuracy of stationary radar, we conclude that such evidence is admissible without the need for expert testimony explaining the scientific principles on which it is founded.
Defendant was charged in a Simplified Traffic Information with operating his vehicle at 71 miles per hour in a 55 miles per hour zone in violation of Vehicle and Traffic Law § 1180 (b). The velocity of defendant’s automobile was recorded by a moving radar device mounted on a patrol vehicle that was approaching defendant from the opposite direction on Route 17 in the Town of Randolph. The radar device at issue — a Kustom Signals KR-10 SP — is an advanced traffic radar system capable of operating either from a stationary patrol vehicle or from one that is moving.
The record establishes that on the date in question, the radar was in "moving” mode, and was being operated by J. R. Hall, Chief of Police for the Town of Randolph. After visually estimating defendant’s speed at 70 miles per hour, Chief Hall switched on the radar unit which recorded defendant’s speed at 71 miles per hour, thus confirming Hall’s visual estimate. The trial evidence demonstrates that the radar unit had been laboratory tested for proper calibration and that Hall had tested the unit before and after his tour of duty, using both internal and external calibration methods to ensure that the *485 unit was operating properly.[1] Defendant challenged the admissibility of the radar evidence, however, contending that moving radar had not yet been proven reliable in speed detection, and that expert testimony was required to establish "the operative principles” of such radar and to explain how it can "accurately compensate for the relative speeds and directions of the respective vehicles”.
Randolph Town Court rejected defendant’s contention, admitted the radar evidence, and convicted defendant of speeding. County Court affirmed the judgment of conviction, and leave to appeal was granted by a Judge of this court. On this appeal, defendant repeats his contention that moving radar evidence is inadmissible at trial unless expert testimony explaining the underlying principles of such radar is received. He argues further that the evidence is, in any event, legally insufficient to sustain his speeding conviction. We disagree and, for the reasons that follow, affirm the conviction.
This court has previously recognized the basic validity of the Doppler Principle — the scientific principle underlying all traffic radar. Thus, in People v Magri (3 NY2d 562, supra), we held that "it will no longer be necessary to require expert testimony in each case as to the nature, function or scientific principles underlying” stationary traffic radar (People v Magri, supra, at 566). In so holding, we noted that the use of radar for speed detection was but one of a variety of scientific methods routinely accepted in our courts for their general reliability, including "reproductions by photography * * * X rays, electroencephalograms, electrocardiograms, speedometer readings, time by watches and clocks, identity by fingerprinting, and ballistic evidence” (People v Magri, supra, at 566).
Like stationary traffic radar, moving radar is also based upon the Doppler Principle. That principle, as explained in the "Trainee Instructional Manual” prepared by the National Highway Traffic Safety Administration as part of its "Basic Training Program in RADAR Speed Measurement”, describes *486 the frequency change that occurs when there is relative motion between two objects, one of which is transmitting wave energy. Such relative motion will occur whenever the distance between the transmission source and the receiver of the wave energy is changing. Thus, when the transmission source is stationary and the receiver is moving — as typically occurs when a radar device mounted on a stationary police vehicle is focused on an approaching target vehicle — there will be relative motion. Similarly, when both the transmission source and the receiver are moving at different speeds or in different directions — as typically occurs when a police vehicle carrying a radar device is approaching a moving target vehicle from the opposite direction — there also will be relative motion (see, Natl Highway Traffic Safety Admin, Basic Training Program in RADAR Speed Measurement, Trainee Instructional Manual, at 3-3 [hereinafter NHTSA Manual]; Note, Radar Speed Detection: Homing in on New Evidentiary Problems, 48 Ford-ham L Rev 1138, 1140).
In each case, traffic radar units can measure the resulting change in frequency, and convert that frequency change into a speed measurement (see, e.g., People v Magri, 3 NY2d, at 565, supra [in stationary radar case, radar unit "measures the difference in the frequencies of the transmitted wave and the received wave” which is then "translated into miles per hour”]). In the case of moving radar, two speed measurements are taken — that of the target vehicle in relation to the patrol vehicle and that of the patrol vehicle in relation to the surrounding terrain. The moving radar unit computes the difference between the frequency change produced by the approaching target vehicle and the typically lesser frequency change produced by the lower relative speed of the patrol vehicle, and then translates this differential into a speed measurement for the target vehicle (see, NHTSA Manual, at 3-10; Note, Radar Speed Detection, op. cit., 48 Fordham L Rev, at 1142). We conclude, therefore, that insofar as the underlying scientific principles of moving and stationary radar are the same, evidence derived from either should be admissible without the need for expert testimony. Although moving radar functions somewhat differently in that it must compensate for the speed of the patrol vehicle, it does not rely on any new technical principles that require justification. This being the case, evidence of speeding obtained by means of moving radar generally will be admissible and "may be sufficient in [itself] if there be reasonable proof of [its] accuracy” (People v *487 Dusing, 5 NY2d 126, 128; see, People v Magri, 3 NY2d, at 566-567, supra; People v Heyser, 2 NY2d 390, 393; People v Marsellus, 2 NY2d 653, 655).
It is generally recognized, however, that because moving radar must measure the speed of the patrol vehicle in addition to that of the target vehicle, there is greater opportunity for error when it is used. Such error may result from distortion of the radar signal resulting in an artificially low speed reading for the patrol vehicle which, in turn, may cause an artificially high speed reading for the target vehicle (see, NHTSA Manual, at 3-11, 3-12; Note, Radar Speed Detection, op. cit., 48 Fordham L Rev, at 1142-1143; Goodson, Technical Shortcomings of Doppler Traffic Radar, 30 J Forensic Sciences 1186 [1985]).[2] Moreover, in heavy traffic, moving radar may make it more difficult to correctly identify the target vehicle (see, Radar Speed Detection, op. cit., 48 Fordham L Rev, at 1146). Since the potential for error is greater, the prosecution will bear a greater burden of proof in demonstrating the accuracy of the particular radar unit involved. Thus, in addition to establishing that the moving radar was in proper working condition and that it was operated correctly by one who was qualified and experienced in the operation of traffic radar, the evidence should show that the police officer independently verified the speed of the patrol vehicle (e.g., by comparing the speed registered by the radar unit with the speed indicated by the patrol vehicle speedometer), and that the radar was used in an area posing a minimal risk of misidentification or distortion (i.e., from heavy traffic, large trucks or large roadside objects such as billboards) (see, NHTSA Manual, at 3-11, 3-12; Note, Radar Speed Detection, op. cit., 48 Fordham L Rev, at 1161; see also, State v Hanson, 85 Wis 2d 233, 245, 270 NW2d 212 [establishing foundation requirements for the admissibility of moving radar evidence in Wisconsin]).
 In the instant case, the evidence adduced at trial was legally sufficient to sustain defendant’s conviction of speeding. The record clearly establishes that the KR-10 SP moving radar unit had been correctly calibrated; that Chief Hall was *488 a qualified Doppler Traffic Radar Operator;[3] that he had independently verified the speed of his patrol vehicle by comparing the speed registered by the radar unit with the patrol vehicle speedometer; and that the road and traffic conditions were such that any distortion or misidentification was highly unlikely. The independent verification of the patrol vehicle speed eliminates any significant possibility that signal distortion could have caused an artificially high speed reading for the target vehicle. In any event, even if the radar evidence standing alone were deemed insufficient to support the conviction, there is additional evidence here that sufficiently corroborates the accuracy of the radar reading so as to establish defendant’s guilt beyond a reasonable doubt. Chief Hall testified that he was trained in speed estimation and that he visually estimated the speed of the target vehicle to be 70 miles per hour prior to switching on the radar unit. In light of this corroborative evidence, any perceived deficiency in the radar evidence is of no consequence (see, People v Olsen, 22 NY2d 230; People v Dusing, 5 NY2d 126, supra; People v Magri, 3 NY2d 562, supra; People v Heyser, 2 NY2d 390, supra). Finally, we note that defendant has failed to preserve his challenge to the sufficiency of the trial court’s return by not moving, pursuant to CPL 460.10 (3) (e), to require the filing of an amended return, and that his other contentions are either unpreserved or without merit.
Accordingly, the order of the County Court should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed.

. The external calibration method used by Chief Hall involves placing a vibrating tuning fork near the radar unit’s antenna while observing the speed registered by the radar. The tuning fork is calibrated to oscillate at a frequency corresponding to a particular speed, thus permitting verification of the radar unit’s accuracy. The internal calibration method relies on an integral oscillator contained within the radar unit that is preset to display a certain speed when activated (see generally, Note, Radar Speed Detection: Homing in on New Evidentiary Problems, 48 Fordham L Rev 1138, 1153 [1980]).

. This type of error can sometimes occur if a large stationary roadside object, such as a billboard or building, distorts the signal received by the radar unit. Similar errors can result if the patrol vehicle passes, or is passed, on the road by other vehicles, or if the patrol vehicle does not maintain a constant velocity (see, Note, Radar Speed Detection: Homing in on New Evidentiary Problems, 48 Fordham L Rev 1138, 1143; Goodson, Technical Shortcomings of Doppler Traffic Radar, 30 J Forensic Sciences 1186 [1985]).

. Chief Hall had been on the town’s police force 15 years and was certified as a Doppler Traffic Radar Operator. He had received training on the KR-10 SP radar device and was also expert at estimating the speed of moving vehicles from either a moving or standing patrol vehicle.