{¶ 1} Appellant, Venis Tisdale, appeals his conviction in the Cleveland Municipal Court for speeding. For the reasons stated herein, we vacate the decision of the trial court and discharge appellant.
 {¶ 2} On April 2, 2007, Tisdale was charged with speeding in violation of Cleveland Codified Ordinance Section 433.03. Tisdale entered a plea of not guilty, and the case proceeded to trial on April 26, 2007.
 {¶ 3} At trial, Officer LaWayne Smith of the Cleveland Police Department testified that on April 2, 2007, he pulled Tisdale over for speeding. Officer Smith had been monitoring traffic at East 105th Street and Parklane Avenue with his Genesis radar unit. He was stationed at a turnaround adjacent to Parklane Avenue, and was parked facing northbound in order to monitor southbound traffic, which would have poor ability to see him. Officer Smith testified that he tracked Tisdale, who was driving southbound, driving at a speed of 43 m.p.h. in a 25 m.p.h. speed zone. The officer stated he "locked him on my Genesis, got a visual look at him, pulled him over, [and] gave him a citation for doing 43 in a 25." He further testified that he was certified to use the radar system, that the radar system was in the front of his vehicle, and that he was monitoring vehicles coming toward him. Tisdale testified that he was driving 25 miles per hour. The trial court found Tisdale guilty and sentenced him to a fine of $75 and court costs.
 {¶ 4} Tisdale has appealed the judgment of conviction and has raised five assignments of error for our review. We begin by addressing Tisdale's fifth *Page 3 
assignment of error because it is dispositive of the matter. This assignment of error challenges the sufficiency of the evidence and provides in pertinent part that "no foundation was laid as to the accuracy of the officer's `Genesis Radar Unit,' the radar unit the police officer had testified that he had in his vehicle to monitor traffic with."
 {¶ 5} When reviewing the sufficiency of the evidence, we must examine the evidence in the light most favorable to the city and determine whether that evidence could have convinced any rational trier of fact that the essential elements of the crime had been proved beyond a reasonable doubt. See State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 6} Tisdale argues that the city failed in the trial court to properly lay the foundation for the radar device's accuracy and reliability, and therefore, there was insufficient evidence to convict him of speeding. His assignment of error is well taken.
 {¶ 7} The time again has come for Ohio courts to review the requirements to prove a case of speeding based on the reading of a speed measuring device. It has been 50 years since the Ohio Supreme Court last addressed the issue.
 {¶ 8} In East Cleveland v. Ferell (1958), 168 Ohio St. 298, the Ohio Supreme Court considered whether expert testimony was required on the electronics principles involved in radar speed detection. The court recognized that there was a developing realization upon the part of courts that such expert testimony was no longer required and quoted with approval a passage from a New York case as *Page 4 
follows: `"We think the time has come when we may recognize the general reliability of the radar speed meter as a device for measuring the speed of a moving vehicle, and that it will no longer be necessary to require expert testimony in each case as to the nature, function or scientific principles underlying it.'" Id. at 303, quoting People v. Magri
(N.Y.App. 1958), 3 N.Y.2d 562, 147 N.E.2d 728.
 {¶ 9} The Ohio Supreme Court recognized that the same conclusion had been reached by other courts of last resort in the United States. The court cited the New Jersey case of State v. Dantonio (N.J. 1955), 18 N.J. 570, 115 A.2d 35, where the New Jersey court stated: "* * * under the circumstances it would seem that evidence of radar speed meter readings should be received in evidence upon a showing that the speed meter was properly set up and tested by the police officers without any need for independent expert testimony by electrical engineers as to its general nature and trustworthiness." A similar conclusion was made in the Minnesota case of State v. Gerdes (Minn. 1971), 291 Minn. 353, 356,191 N.W.2d 428. Each of these courts quoted from Woodbridge, Radar in the Courts, 40 Va. L.Rev. 809, 814:
 "Under the Uniform Rules of Evidence, already approved by the American Bar Association at its 1953 meeting, judicial notice `shall be taken without request by a party * * * of such specific facts and propositions of generalized knowledge as are so universally known that they cannot reasonably be the subject of dispute.' Radar speed meters are now in this category. Why should the time of experts be wasted and the expenses of litigation be increased by compelling such men to appear in court after court telling the same truths over and over? While it is agreed that every reasonable doubt about the accuracy of new developments should promptly be resolved against them in the absence of expert evidence, there is no longer any such doubt concerning radar. *Page 5 
 Rather, the applicable maxim should now be, `What the world generally knows a court of justice may be assumed to know.'" (Emphasis added.)
Dantonio, supra at 579; Gerdes, supra at 356.
 {¶ 10} Following this line of reasoning, the Ohio Supreme Court held in Ferell, that "readings of a radar speed meter may be accepted in evidence * * * without the necessity of offering expert testimony as to the scientific principles underlying them." Ferrell,168 Ohio St. at 303. Nevertheless, the court recognized that a determination still needed to be made "as to the sufficiency of the evidence concerning the accuracy of the particular speed meter involved in the instant case and the qualifications of the person using it." Id.
 {¶ 11} In Ferell, the device in use was a stationary radar device operating on the "Doppler effect." Ferell set the admissibility requirements until new technology changed that standard. As stated inState v. Wilcox (1974), 40 Ohio App.2d 380: "* * * a radar speed-detection device using the Doppler principle is recognized scientifically, even in the absence of expert testimony with respect to its construction and method of operation, [but] we do not feel that this principle can be extended to a device which not only measures speed but adjusts such speed measurement for the speed of the vehicle in which it is mounted. This is especially true in the absence of any evidence that the device in question can, in fact, accomplish that purpose. It is only by inference that this conclusion could be reached from the evidence herein." *Page 6 
 {¶ 12} Thus, Ferell had been limited to situations involving the use of stationary radar devices. The advent of newer speed measuring devices transformed the admissibility standard, and Ohio courts once again were requiring expert testimony. However, it now appears that Ohio courts may have fallen behind the technological advancements while the state contends that the community at large has come to accept the general reliability of these devices.
 {¶ 13} As the standard has evolved, Ohio courts hold that where a moving radar device is involved, expert testimony or judicial notice of the construction and accuracy of moving radar devices is required to sustain a conviction based on a reading from such device. Mentor v.Becka (Jan. 12, 1990), Lake App. No. 88-L-13-146. As stated inWilcox, 40 Ohio App.2d 380, at paragraph two of the syllabus: "A person may not be convicted of speeding solely upon evidence obtained from a radar speed-meter device mounted in a moving patrol car in the absence of (1) expert testimony with respect to construction of the device and its method of operation with respect to its ability to differentiate the speed of a vehicle approaching the moving patrol car from the opposite direction from the combined speed at which the two vehicles are moving toward each other, and (2) evidence that the device is in good condition for accurate work, and (3) evidence that the witness using the device is one qualified for its use by training and experience." See, also,State v. Bayus, Geauga App. No. 2005-G-2634, 2006-Ohio-1684. On the first prong, once a trial court has heard expert testimony on the issue, it may take judicial notice *Page 7 
of the radar's reliability in subsequent cases. State v. Kirkland (Mar. 2, 1988), Logan App. No. 8-97-22.
 {¶ 14} Where judicial notice is applicable, the method of proof involves establishing the reliability of a speed-measuring device by (1) a reported municipal court decision; (2) a reported or unreported case from an appellate court; or (3) the previous consideration of expert testimony about a specific device where a trial court notes it on the record. Cincinnati v. Levine, 158 Ohio App.3d 657, 2004-Ohio-5992. We question the practical limitations of judicial notice being limited to the territorial jurisdiction of the court and believe the Ohio Supreme Court may wish to re-examine the standard in terms of cross-jurisdictional judicial notice.
 {¶ 15} The city makes a compelling argument that all radar-based speed measuring devices in use today, and arguably all laser-based units now in use, are reliable, even in the absence of expert testimony as to their reliability.[1] There is a compelling view that the same trust and reliability the Ohio Supreme Court placed in stationary radar devices in Ferell should now, 50 years later, be extended to other speed measuring devices that have arguably withstood the test of time. Authority from other states supports the view that the principles ofFerell should be extended *Page 8 
to other radar and laser speed measuring devices that have stood the test of time in terms of their scientific reliability.
 {¶ 16} A review of the progression of New York case law, which was relied upon by the Ohio Supreme Court in Ferell, reflects that the principles have been extended to moving radar devices. In People v.Knight (N.Y. 1988), 72 N.Y.2d 481, 530 N.E.2d 1273, the court recognized its earlier holding in People v. Magri, supra, and extended the principle to "moving" radar devices, "[notwithstanding that the accuracy of `moving' radar implicates several variables not relevant to the accuracy of stationary radar." However, because of the greater opportunity for error associated with a moving device, the court imposed additional conditions to insure the instrument's accuracy. The New York court set forth a new standard as follows:
 "Evidence derived from a radar device that was moving at the time it recorded the speed of defendant's vehicle is admissible without the need for expert testimony explaining the scientific principles on which it is founded. Stationary traffic radar has been recognized as generally reliable for measuring the speed of a moving vehicle, and evidence derived therefrom is admissible without the need for expert testimony explaining the underlying scientific principles of traffic radar. Insofar as the underlying scientific principles of moving and stationary radar are the same, evidence derived from either should be admissible without the need for expert testimony. However, since moving radar must measure the speed of the patrol vehicle in addition to that of the target vehicle, there is greater opportunity for error when it is used and, therefore, the prosecution will bear a greater burden of proof in demonstrating the accuracy of the particular radar unit involved. Thus, in addition to establishing that the moving radar was in proper working condition and that it was operated correctly by one who was qualified and experienced in the operation of traffic radar, the evidence should show that the police officer independently verified the speed of the patrol vehicle, and that the radar was used in an area posing a minimal risk of misidentification or distortion." *Page 9 
Id. at paragraph one of the syllabus.
 {¶ 17} A similar approach to moving radar has been employed by Wisconsin courts. See State v. Hanson (Wis. 1978), 85 Wis.2d 233, 245,270 N.W.2d 212. Also, many courts have recognized the general reliability of laser speed-detection devices and have deemed their results admissible in court, even in the absence of scientific evidence of the laser's reliability. See State v. Williamson (Ida. App. 2007),166 P.3d 387, 389-390 (collecting authorities from other states holding that laser speed detection devices are generally reliable and their results admissible in court); see, also, Hawaii v. Stoa (Haw.App. 2006), 112 Haw. 260, 268, 145 P.3d 803 (recognizing laser gun technology is premised on well-understood scientific principles).
 {¶ 18} Following the above authority, we believe that expert testimony is no longer required to establish the general reliability of radar or laser devices that are used to determine speed. Sufficient evidence must still be presented concerning the accuracy of the particular speed meter involved and the qualifications of the person using it. In addition, where a moving device is involved, the prosecution also bears the burden of showing that the police officer independently verified the speed of the patrol vehicle, and that the radar was used in an area posing a minimal risk of misidentification or distortion.
 {¶ 19} In this case, the testimony shows Officer Smith's vehicle was stationary and the Genesis unit was mounted in his vehicle. Notwithstanding the reliability of *Page 10 
the device, the city failed to meet the other requirements to establish a speeding violation in this case.
 {¶ 20} The city's reliance on both Mayfield Heights v. Kincaid (May 13, 1999), Cuyahoga App. No. 74182, and State v. Ledbetter (Jan. 8, 1999), Miami App. No. 98-CA-10, are misplaced. In Kincaid we presumed regularity in the face of a silent record. In that instance, unlike here, there was evidence that the instrument was calibrated. Likewise,Ledbetter is distinguishable. In that case the court used the personal observation of the officer to support the lack of calibration. The Eighth Appellate District has repeatedly held "that the opinion of the officer that the defendant was speeding, based upon a visual estimation, without more, is insufficient to sustain a conviction by proof beyond a reasonable doubt." Middleburg Heights v. Campbell, Cuyahoga App. No. 87593, 2006-Ohio-6582.
 {¶ 21} Here, no testimony or evidence was provided to establish that the particular unit was accurate and in proper working order. Officer Smith did not testify that the machine was calibrated prior to his coming on duty that day and that it was operating properly. He merely testified that the device was a Genesis radar unit, that it was mounted in his front window, and that he had been certified to use it. Although Officer Smith testified that he was certified to use the radar system, his training was not otherwise described, nor was his certificate of training offered into evidence.
 {¶ 22} Nevertheless, the city claims that Tisdale failed to raise an objection below and waived his challenge on appeal. We disagree. As stated in State v. Palmer, *Page 11 
Hamilton App. No. C-050750, 2006-Ohio-5456: "When defendants enter a `not guilty' plea, they preserve their right to object to the sufficiency of the evidence. And a conviction based on insufficient evidence almost always amounts to plain error. Whether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic, because regardless of the standard used, a conviction based on legally insufficient evidence constitutes a denial of due process." (Internal footnotes and quotations omitted.)
 {¶ 23} In this case, Tisdale's speeding conviction was based solely on an inadmissible radar reading. Officer Smith relied upon his radar device to determine that Tisdale was speeding, and no other evidence was offered to establish that Tisdale was in fact speeding. Thus, viewing the evidence in the light most favorable to the city, we may only conclude that a reasonable trier of fact could not have found that the city proved each element of the offense beyond a reasonable doubt. Accordingly, we sustain Tisdale's fifth assignment of error with respect to the sufficiency challenge. We find the remaining issues and assignments of error are moot.
 {¶ 24} Because the outcome of our decision was based on the city's failure to establish the requirements of the unit's accuracy and the officer's qualifications, we decline to certify a conflict to the Ohio Supreme Court. However, we recognize that the analysis in this case required consideration of the general reliability of the device and that our decision in that regard is in conflict with the line of cases that have not extended the principles announced in Ferell beyond stationary radar devices. E.g., *Page 12 State v. Wilcox (1974), 40 Ohio App.2d 380; Mentor v. Becka (Jan. 12, 1990), Lake App. No. 88-L-13-146. Thus, in the event the city attempts to appeal this matter, we would hope that the Ohio Supreme Court would accept the case for review.
 {¶ 25} Judgment of the municipal court is vacated, and appellant is ordered discharged.
 {¶ 26} It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, PRESIDING JUDGE
FRANK D. CELEBREZZE, JR., J., CONCURS,
CHRISTINE T. McMONAGLE, J., CONCURS IN JUDGMENT ONLY
[1] At oral argument the city asserted that although it could point to no instance where an expert ever testified about the composition or accuracy of a "Genesis" radar unit for measuring speed in Cleveland, this requirement is outdated. The city insists that "Genesis" radar speed measuring devices have been in use for so long, and in so many jurisdictions across the state, that requiring Cleveland to individually assess the scientific reliability of such a device is now unnecessary. *Page 1