{¶ 21} I respectfully disagree with my colleagues' conclusion that judicial notice was inappropriately taken in this case simply because the State failed to identify which specific device Officer Roth utilized when recording Freitag's speed. Instead, I would affirm Freitag's conviction because I believe that speed measuring devices have reached the point that they are generally accepted as scientifically reliable, thus the specific device or model employed by Officer Roth is irrelevant to determining Freitag's guilt.
 {¶ 22} In State v. Miko, 9th Dist. No. 07CA0018-M, 2008-Ohio-1991, this Court determined that judicial notice of the scientific accuracy of a speed measuring device could be appropriately taken under Rule 201(B)(1) "if the trial court, in a reported decision, or the appellate court for the district in which the trial court is located, in a reported or unreported decision, determines that it is scientifically accurate." (Internal quotations omitted.) Miko at ¶ 11, citingCincinnati v. Levine, 1st Dist. No. C-040192, 2004-Ohio-5992. Further, a court can take judicial notice under Rule 201(B)(2) "if it has determined, in an earlier case, based on expert testimony in that earlier case, that the particular speed measuring device is scientifically accurate." Miko at ¶ 12; see, also, Levine at ¶ 10. I consider these requirements outdated and *Page 11 
unnecessary given the state of the science surrounding all radar and laser-based speed monitoring devices and the revised opinion reporting rules of the Ohio Supreme Court.
 {¶ 23} The reporting distinctions outlined in Miko and adopted by our Court no longer comport with the revised reporting rules enacted by the Supreme Court in 2002 which effectively abolished the distinction between "reported" and "unreported" appellate court opinions. See Rep.R. 4. Nor do they align with the Supreme Court's current requirements for the reporting of trial court opinions. See Rep.R. 5. Thus, I consider the requirement born from case law that judicial notice of speed radar devices may only be taken in a case where the device's scientific accuracy is reported in a published trial court decision or a published or unpublished appellate court decision to be inconsistent with Supreme Court's revised rules governing opinion reporting.
 {¶ 24} A court also can take judicial notice if it has determined in a previous case, based on expert testimony received in that case, that the device is scientifically reliable. Miko at ¶ 12. I consider the Eighth District's opinion in Cleveland v. Tisdale, 8th Dist. No. 89877,2008-Ohio-2807, to present a more reasoned and uniform approach to this issue. In Tisdale, the appellate court held "that expert testimony is no longer required to establish the general reliability of radar or laser devices that are used to determine speed." Tisdale at ¶ 18. TheTisdale court followed the lead of other states who have established that speed measuring devices have achieved a state of scientific reliability, thus courts in those states no longer focus on the underlying science or mechanics upon which the machine operates, but instead focus on the accuracy of the particular device being used and the qualifications of the person using it. Tisdale at ¶ 16-18 (explaining that New York, Wisconsin, Idaho, and Hawaii no longer require expert testimony on the general reliability of speed measuring devices, though they continue to require evidence of the *Page 12 
instrument's accuracy, the operator's use and the operator's training, and citing to case law from Maryland, Minnesota, New Jersey in support of the same). See, also, Ga. Code Ann., § 40-14-17; Va. Code Ann., § 46.2-882.
 {¶ 25} Ohio first addressed speed radar reliability in East Clevelandv. Ferell (1958), 168 Ohio St. 298, 303, where it held that stationary radar devices had reached the point that their readings "may be accepted into evidence *** without *** offering expert testimony as to scientific principles underlying them." Since Ferell, however, Ohio courts have continued to require expert testimony on a device-specific basis as technology has changed over time to include moving and laser-based devices. See, e.g., State v. Saphire (Dec. 8, 2000), 2d Dist. No. 2000 CA 39 (addressing what appeared to be the Ultralite 20/20 Model 200 laser); State v. Kirkland (Mar. 2, 1998), 3d Dist. No. 8-97-22 (addressing the K-55 radar-moving mode); State v. Schroeder (Sept. 8, 1995), 11th Dist. No. 95-G-1907 (addressing the LTI 20/20 laser);Moreland Hills v. Gazdak (1988), 49 Ohio App.3d 22 (addressing the Model S-80 moving radar). This movement, however, has evolved into a device-and jurisdiction-specific inquiry, and has returned us to apre-Ferell state of "[wasting] the time of experts *** and [increasing] the expenses of litigation *** by compelling such [experts] to appear in court after court telling the same truths over and over[.]"Ferell, 168 Ohio St. at 302, quoting State v. Dantonio (1955),18 NJ. 570, 579.
 {¶ 26} The appropriate question before the Court should be whether thetheory underlying the device has met scientific reliability standards, not whether the design of each specific device has. See Goldstein v.State (1995), 339 Md. 563, 574-75. I do not think that the science underpinning speed monitoring should be treated any differently than other scientific theories, such as the science supporting the measurement of a person's blood alcohol content, *Page 13 
done by way of a breathalyzer device. Id.; see, also, Westerville v.Cunningham (1968), 15 Ohio St.2d 121, 123 (finding that "such [blood alcohol] tests are today generally recognized as being reasonably reliable on the issue of intoxication when conducted with proper equipment and by competent operators") Instead, I side with theTisdale court in concluding that, given the well-established reliability of radar and laser based speed measuring devices, the focus at trial should be to expose inaccuracies of the devices being used or insufficient qualifications of the officer using the device. Accordingly, even if the State failed to identify what specific model of the Genesis Radar Officer Roth used to record Freitag's speed, I would permit that evidence at trial, subject to proof that the device was in proper working order and that Officer Roth was adequately trained to use it.
 {¶ 27} In this case, Officer Roth testified in detail as to the internal and external calibration tests he performed on the Genesis Radar. He further testified that he was trained to use speed measuring devices while at the police academy and that he attended a class specifically on the Genesis Radar when the Village purchased the devices. Thus, I would conclude, without the need for judicial notice as to the reliability of the specific model of the device employed, that the trial court could appropriately rely on the readings Officer Roth recorded from the Genesis Radar that night.
 {¶ 28} Notwithstanding my preference to eliminate the requirement of expert testimony with respect to the general reliability to moving and laser based speed measuring devices, I also write to reiterate that our district is one in which the testimony of an officer who is trained in visual speed detection is considered sufficient to sustain a speeding conviction. See State v. Wilson (Nov. 20, 1996), 9th Dist. No. 95CA006285, at *1. See, also, State v. Kincaid (2003),124 Ohio Misc.2d 92, 95; State v. Harkins (Aug. 5, 1987), 4th Dist. No. 431, at *3-4;Columbus *Page 14 v. Bravi (Mar. 5, 1991), 10th Dist. No. 90AP-1135, at *2; State v.Jones (Nov. 8, 1991), 11th Dist. No. 91-T-4508, at *2. In this case, Officer Roth testified that "based on [] visual and audible observation," he determined that Freitag's sport utility vehicle was speeding. Officer Roth testified that that he had been trained in audible speed detection by a field training officer when he started with the Village seven years ago. He further stated that "the sound is what drew [his] attention specifically to the mirror to begin an observation of the vehicle." Officer Roth testified that he visually monitored the vehicle traveling in excess of the speed limit for 100-150 yards as it approached his police car before he activated the Genesis Radar. Accordingly, I would affirm Freitag's conviction even in the absence of Genesis Radar's recorded speeds based on principles of stare decisis. *Page 1