[Cite as *Shaker Hts. v. Sevayega*, 2013-Ohio-589.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 98780

# CITY OF SHAKER HEIGHTS

PLAINTIFF-APPELLEE

vs.

# REGINALD SEVAYEGA

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Shaker Heights Municipal Court
Case No. 12TRD02500

**BEFORE:** McCormack, J., Keough, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 21, 2013

**FOR APPELLANT**

Reginald D. Sevayega, Ph.D., pro se
4701 Belfiore Road
Warrensville Hts., OH 44128


**ATTORNEY FOR APPELLEE**

C. Randolph Keller
Chief Prosecutor
City of Shaker Heights
3400 Lee Road
Shaker Heights, OH 44120

TIM McCORMACK, J.:

{¶1}   Defendant-appellant, Reginald Sevayega ("Sevayega"), pro se, appeals from a judgment of the Shaker Heights Municipal Court rendered after a trial, which found him guilty of speeding and sentenced him to a fine of $75 and court costs.

## Substantive Facts and Procedural History

{¶2}   On March 20, 2012, Sevayega received a speeding ticket that   alleged he operated his vehicle at 33 m.p.h. in a school zone, in violation of Shaker Heights Codified Ordinances 1133.03, which limits a vehicle's speed to 20 m.p.h. in a school zone. Sevayega pleaded not guilty, and the matter proceeded to a bench trial.

{¶3}   At trial, Corporal Yarcusko, a police officer with the city of Shaker Heights for 27½ years, testified that he was in uniform and operated a fully- marked police cruiser on the day of the incident.   Before beginning his shift, he calibrated his radar, a Golden Eagle K9.   A radar log submitted as an exhibit in conjunction with the officer's testimony showed that the calibrations of the unit were performed at 10:23 a.m. that day, and it showed the unit to be functioning properly.   Corporal Yarcusko also described the procedure he utilized to check the calibrations of the radar unit.

{¶4}   Corporal Yarcusko parked his cruiser across from a parking lot near St. Dominic School, where children were playing on a playground in the parking lot.   At around 12:00 p.m., he saw Sevayega's vehicle, a red Buick Century, traveling in the (eastbound) right lane of Van Aken Boulevard and passing a vehicle in the left lane.

When the red Buick passed the corporal's cruiser, it was clocked at 33 m.p.h. by the radar.

{¶5} Sevayega, who represented himself at trial, did not testify, but called a witness to testify on his behalf. Janice Haynes, a resident in the vicinity whose residence Sevayega was traveling to when he was pulled over by the police officer, did not witness the incident, but testified that she frequently walked in the area, and that the school zone sign is not visible to a driver, such as Sevayega, who turns from Norwood Road onto Van Aken Boulevard.

{¶6} At closing argument, Sevayega argued that, according to Ohio case law, R.C. 4511.21 (which is similar to Shaker Heights Codified Ordinances 1133.03), applies only when the school children are going to or leaving school during opening or closing hours, while the alleged speeding incident occurred at a time during lunch hour at St. Dominic school. Sevayega also argued that the school zone sign was not sufficiently visible from Norwood Road and that, at the time he was allegedly clocked at 33 m.p.h., he had just turned into Van Aken from Norwood Road and it would have been impossible for him to be traveling at a high speed after just turning the corner.

{¶7} After the parties presented the evidence, the trial court denied Sevayega's motion for acquittal pursuant to Crim.R. 29, found him guilty of speeding in a school zone, and sentenced him to a fine of $75.

{¶8} Sevayega raises four assignments of error for our review on appeal. Essentially, he claims, for the first time, that there was insufficient evidence to convict him of speeding because the radar evidence was not admissible.

## Standard of Review for Sufficiency of the Evidence

{¶9} A defendant is entitled to acquittal on a charge against him under Crim.R. 29 if the evidence is insufficient to sustain a conviction. When reviewing a claim of insufficient evidence, the relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

## Claims on Appeal

{¶10} Under the first, second, and third assignments of error, Sevayega argues his conviction of speeding was not supported by sufficient evidence because the city failed to present evidence regarding the reliability or the accuracy of the radar unit. He also claims the city failed to lay the foundation for Corporal Yarcusko's testimony regarding his operation of the radar because it did not offer evidence regarding his training and ability to operate the radar unit. Under the fourth assignment of error, Sevayega claims the trial court improperly permitted the police officer to testify that he observed Sevayega to be traveling above the speed limit of 20 m.p.h.

## Radar Evidence

**{¶11}** This court, in *Cleveland v. Tisdale*, 8th Dist. No. 89877, 2008-Ohio-2807, summarized the case law development regarding the use of radar evidence in Ohio. The controversy concerned whether the prosecutor must, in every speeding case, present expert testimony to show the reliability of the scientific principles underlying the use of radar. The issue was settled by the Ohio Supreme Court more than 50 years ago in *E. Cleveland v. Ferell*, 168 Ohio St. 298, 154 N.E.2d 630 (1958), syllabus. The court stated that "the time has come to recognize the general reliability of the radar speed meter" and that "it will no longer be necessary to require expert testimony in each case as to the nature, function or scientific principles underlying it." *Id.* at 303, quoting *People v. Magri*, 3 N.Y.2d 562, 147 N.E.2d 728, 170 N.Y.S.2d 335 (1958).

**{¶12}** *Ferell* involved a *stationary* radar device. For many years, the courts limited the holding in *Ferell* to situations involving the use of stationary radar devices. *Tisdale* at ¶ 11. The courts did not believe this principle should be extended to a *moving* radar device, which not only measures speed but adjusts such speed measurement for the speed of the vehicle in which it is mounted. *See State v. Wilcox*, 40 Ohio App.2d 380, 319 N.E.2d 615 (1974); *Tisdale* at ¶ 11.

**{¶13}** Subsequent to *Wilcox*, however, the courts have lessened the evidentiary burden on the prosecutor regarding the use of a moving radar device as well, holding that once a trial court heard expert testimony on the issue, it may take judicial notice of the radar's reliability in later cases. *Tisdale* at ¶ 13, citing *State v. Kirkland*, 3d Dist. No. 8-97-22, 1998 Ohio App. LEXIS 1100 (Mar. 2, 1998). In other words, either expert

testimony or judicial notice of the construction and accuracy of moving radar devices satisfies the evidentiary requirement regarding the reliability of radar devices. *Tisdale* at ¶ 13. *See also State v. Yuan*, 3d Dist. No. 8-07-22, 2008-Ohio-1902, ¶ 12.[1]

{¶14} In *Tisdale*, this court went a step further and expressed the belief that *all* radar-based speed measuring devices in use today, and arguably all laser-based units now in use, are reliable, even in the absence of expert testimony as to their reliability. We stated "[t]here is a compelling view that the same trust and reliability the Ohio Supreme Court placed in stationary radar devices in *Ferell* should now, 50 years later, be extended to other speed measuring devices that have arguably withstood the test of time." *Id*. at ¶ 15.

{¶15} In this case, however, we do not need to reach the issue of whether the *Ferell* principle should be extended to a moving device because this case involves a stationary radar unit — it is undisputed that the corporal's patrol vehicle was stationary when the radar clocked Sevayega going at a speed of 33 m.p.h. Pursuant to *Ferell*, "readings of a radar speed meter may be accepted in evidence * * * without the necessity of offering expert testimony as to the scientific principles underlying them." *Ferell,* 168 Ohio St. at 303, 154 N.E.2d 630. Applying *Ferell*, therefore, expert testimony was not necessary in this case to establish the reliability of the radar device.

---

[1]Regarding the proper manner of taking judicial notice, the reliability of a speed-measuring device can be established by (1) a reported municipal court decision, (2) a reported or unreported case from an appellate court, or (3) the previous consideration of expert testimony about a specific device where a trial court notes it on the record. *Tisdale* at ¶ 14.

**{¶16}** Regardless of whether the radar unit is stationary or moving, to convict a defendant of speeding based on radar evidence, the state must always, in addition to the reliability of the speed-measuring device, present evidence to show that (1) the radar device was in good condition for accurate work, and (2) the witness using the device was one qualified for its correct use by training and experience. *Tisdale* at ¶ 13; *State v. Everett*, 3d Dist. No. 16-09-10, 2009-Ohio-6714, ¶6. Therefore, here, the city must prove (1) the radar unit was accurate and in working order, and (2) Corporal Yarcusko was qualified to operate it.

**{¶17}** In *Tisdale,* this court reversed a conviction of speeding because the police officer did not testify that the radar was calibrated prior to his coming on duty, and therefore, the city failed to show that the radar was operating properly.

**{¶18}** Unlike *Tisdale*, the police officer in this case testified that he calibrated the Golden Eagle K9 radar unit before beginning his shift. The transcript reflects the following testimony given by Corporal Yarcusko in conjunction with the city's Exhibit 1, a radar log from February 29, 2012 to March 29, 2012:

> Q: Now, Corporal, are there certain things that you do with respect to the operation of your cruiser prior to leaving and heading out onto the road?
>
> A: Yes. One of the first things I do is check the calibration of my radar unit.
>
> Q. And on March the 20th, 2012, did you in fact do that, sir?
>
> A. Yes, I did.
>
> * * *

Q. Corporal, I'd like to show you what has been marked for identification purposes as Plaintiff's Exhibit Number 1. Can you take a look at that sir. And first of all, identify it, please?

A. This is a — radar logs that we keep.

Q. And what is the purpose of that radar log, sir?

A. Well, to check the radar, you know, to make sure it's functioning properly. And also to log it in, that it is functioning properly.

Q. Okay. And is there an entry with respect to the radar for the date of March the 20th, 2012?

A. Yes. It indicates that the calibrations were checked at 10:23.

Q. And can you tell the Court that the results were of your calibration check?
A. Yes. The first thing we do is an internal standard check that the radar unit does by itself. When you power it up, it comes on with a series of LED lights, it gives the number 8s, and if all the LED lights are functioning then it's running properly.

It then goes through the internal standard check and an audio. The audio is a pitch. It gives a pitch and then it has the words P-A-S, short for pas[s], that it passed the internal standard check.

{¶19} The testimony of the officer who calibrated the radar device prior to its use would be sufficient to demonstrate that a radar unit was properly calibrated. *State v. Kress*, 11th Dist. No. 2007-T-0075, 2008-Ohio-1658, citing *State v. Doles,* 70 Ohio App.2d 35, 39, 433 N.E.2d 1290 (10th Dist.1980); *Tisdale* at ¶ 21 (no testimony or evidence was provided to establish that the particular unit was accurate and in proper working order because the police officer did not testify that the machine was calibrated prior to his coming on duty that day and that it was operating properly); *Kettering v. Stachler*, 2d Dist. No. 23697, 2010-Ohio-5289. ¶ 10.

{¶20} Sevayega argues that there was no testimony regarding the *external* calibration of the radar unit with the use of tuning forks. Our review of the record shows that, although the corporal's testimony did not touch upon the external calibration, the radar log appears to show that two tuning forks, numbered #51823 and #51848, were used in the calibrations. The log indicates that on March 20, 2012, the log recorded readings of 55 m.p.h. and 30 m.p.h. from the tuning forks, as in all the other days on the log. From this record, we conclude the city presented sufficient evidence establishing that the police officer calibrated the radar unit, and thus, the radar device was in good condition for accurate work. *Kress*; *Tisdale*.

{¶21} Regarding the police officer's qualification to administer the radar unit, Corporal Yarcusko testified he has been a police officer with the city of Shaker Heights for 27½ years, and has been assigned to its traffic unit for eight years. He testified he received training with respect to speed detection and the operation of radar equipment, but he did not elaborate.

{¶22} Some courts have held that an officer's testimony with respect to his qualifications and experience is sufficient to establish that he is qualified to use the radar device. *See State v. Bayus*, 11th Dist. No. 2005-G-2634, 2006-Ohio-1684, ¶ 19.[2]

---

[2] We recognize that this court has held, on one occasion, that a police officer's testimony that he was qualified to administer a specific radar unit is insufficient, and that the officer's radar training certificate must be admitted into evidence. *Cleveland v. English*, 8th Dist. No. 84945, 2005-Ohio-1662, ¶ 11. However, the panel in *English* carefully limited its holding to the circumstances of that case, where the type, kind, or model of the speed-detection device used to measure the defendant's speed was never identified by the testifying officer.

Here, the only testimony regarding Corporal Yarcusko's qualification was that he received training with respect to speed detection and the operation of radar equipment, without any further elaboration. The corporal's conclusory testimony regarding his qualification to operate the radar left something to be desired. However, Sevayega did not object to the corporal's testimony regarding his qualification, and when given an opportunity to cross-examine the corporal, he focused on the visibility of the school zone sign instead. Sevayega's failure to object at trial relieved the city of the burden to offer more extensive testimony regarding the police officer's qualification and experience in using the radar unit. We, therefore, apply the well-established principle that a failure to object at trial constitutes a waiver of all but plain error on the issue on appeal. *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977).

**{¶23}** Based on the foregoing analysis, Sevayega's claims regarding the radar evidence raised under the first, second, and third assignments of error are without merit.

**{¶24}** Finally, under the fourth assignment of error, Sevayega claims the trial court should not have permitted the police officer to testify that Sevayega's vehicle "appeared to be traveling above 20 miles an hour." He argues that, because the radar reading should have been excluded, the officer's visual observation was the only evidence for his conviction, and it constituted insufficient evidence. Sevayega is correct that a police officer's visual estimation is insufficient evidence to support a speeding conviction. *Beachwood v. Joyner*, 8th Dist. No. 98089, 2012-Ohio-5884, ¶ 17; R.C. 4511.091(C). In this case, however, as we have explained in the foregoing analysis, the radar evidence

was admissible, and therefore, there was sufficient evidence presented at trial to support Sevayega's conviction of speeding.    The fourth assignment of error is without merit.

**{¶25}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN A. GALLAGHER, J., CONCUR