DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Officer Christopher Santimarino issued Mark Jenney a traffic citation after observing Mr. Jenney driving faster than the posted speed limit. According to Officer Santimarino, he estimated Mr. Jenney was traveling 70 miles per hour in a 60 mile per hour zone. His radar device clocked Mr. Jenney as traveling either 82 or 83 miles per hour. The municipal court convicted Mr. Jenney of speeding, finding that he had been going 70 miles per hour. Mr. Jenney has appealed, arguing that the municipal court incorrectly allowed the City of Barberton to amend the traffic citation at trial, that his conviction is not supported by sufficient evidence, and that his conviction is against the manifest weight of the evidence. This Court affirms because the municipal court properly allowed the City to amend the citation, Officer Santimarino's testimony was sufficient to support his conviction, and his conviction is not against the manifest weight of the evidence. *Page 2 
 CITATION AMENDMENT {¶ 2} Mr. Jenney's first assignment of error is that the municipal court incorrectly allowed the City to amend the traffic citation at the beginning of trial. When Officer Santimarino issued the citation, he wrote that Mr. Jenney had been traveling 79 miles per hour in a 60 mile per hour zone, in violation of Section 4511.21 of the Ohio Revised Code. He forgot to mark a box on the citation form indicating that Mr. Jenney's speed was over the limit or a box indicating that Mr. Jenney's speed was unreasonable for the conditions. Mr. Jenney has argued that, since the boxes were not marked, he did not know whether he was being charged under Section 4511.21(A), which prohibits operating "a motor vehicle . . . at a speed greater . . . than is reasonable or proper," or Section 4511.21(D), which prohibits operating "a motor vehicle . . . [a]t a speed exceeding the posted speed limit. . . ." R.C. 4511.21(A), (D)(6).
 {¶ 3} Mr. Jenney's argument fails because the municipal court correctly allowed the City to amend the citation. Rule 7(D) of the Ohio Rules of Criminal Procedure provides that "[t]he court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." "[B]ecause traffic citations need not be the product of grand jury action, they `should be amendable to cure defects more readily than felony indictments.'" State v. Dunlap, 9th Dist. No. 97CA006859, 1998 WL 332944 at *2 (June 24, 1998) (quoting City ofCleveland Heights v. Perryman, 8 Ohio App. 3d 443, 445 (1983)). The City "may amend a traffic ticket that omits necessary information or includes a clerical error as long as: (1) the original traffic ticket gave the defendant notice of the true nature of the offense; (2) the defendant was not deprived of a reasonable opportunity to prepare a defense; and (3) the amendment *Page 3 
merely clarifies or amplifies the information in the original ticket."Id. (citing Perryman, 8 Ohio App. 3d at 446).
 {¶ 4} On the citation, Officer Santimarino identified the correct statutory provision, Section 4511.21, which deals with speed limits. Mr. Jenney, therefore, had "notice of the true nature of the offense."Id. The amendment merely clarified which subsection the City thought applied. In addition, the municipal court did not deprive Mr. Jenney "of a reasonable opportunity to prepare a defense." It told him that, if he needed additional time for his defense because of the amendment, it "would be glad to continue the case." Id. Mr. Jenney declined the court's offer. His first assignment of error is overruled.
 MOTION FOR ACQUITTAL {¶ 5} Mr. Jenney's second assignment of error is that the municipal court incorrectly denied his motion for acquittal. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to acquittal on a charge against him "if the evidence is insufficient to sustain a conviction. . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v. Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v.West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced an average juror of Mr. Jenney's guilt beyond a reasonable doubt. State v. Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 6} Mr. Jenney has argued that the municipal court should have granted his motion because the City failed to establish a proper foundation for admission of the reading from the Python radar device that Officer Santimarino used to determine his speed. "In general, a velocity reading made by a speed detection device is authenticated by evidence of three specific things. *Page 4 
First, the device `must be accepted as dependable for the proposed purpose by the profession concerned in that branch of science[.]' . . . Second, the [City] must show that the device used was an accepted type and in good condition for accurate work. . . . Finally, the witness using the device must be qualified to operate the device through training and experience." State v. Jamnicky, 9th Dist. No. 03CA0039,2004-Ohio-324, at ¶ 7 (quoting City of East Cleveland v. Ferell,168 Ohio St. 298, 301 (1958)).
 {¶ 7} Mr. Jenney has argued to this Court that the City failed to present any evidence regarding the dependability of the Python device or of Officer Santimarino's qualifications to use it. At trial, Mr. Jenney objected to Officer Santimarino's testimony, arguing that he was not qualified to operate the Python device. He cross-examined Officer Santimarino about his qualifications to use the Python device and contested whether the device was calibrated properly. He did not, however, contest the scientific reliability of the Python device itself. Accordingly, he has forfeited his challenge to the dependability of the Python device and, therefore, this Court will only consider his argument that the City failed to show that Officer Santimarino was qualified to use the device. Id. at ¶ 13; State v. Brown, 9th Dist. No. 02CA0034-M, 2002-Ohio-6463, at ¶ 8.
 {¶ 8} Although Officer Santimarino testified that he is certified to operate the device, he did not produce any evidence of that fact beyond his testimony. Testimony by a law enforcement officer that "he was trained on the radar unit" is insufficient to establish that he is qualified to operate it. Brown, 2002-Ohio-6463, at ¶ 12. "Absent further evidence, such as a certificate of training, [this Court] cannot say that the [City] demonstrated that [Officer Santimarino] was qualified to operate the radar unit." Id. The municipal court, therefore, incorrectly permitted him to testify about how fast the device indicated Mr. Jenney was traveling. *Page 5 
 {¶ 9} Although the municipal court should not have let Officer Santimarino testify about the speed the radar device indicated Mr. Jenney was traveling, it did not convict Mr. Jenney solely on that evidence. The court explained that "what I'm going to do is take everything as a whole, and I'm going to find Mr. Jenney guilty of traveling over the speed limit. However, what I'm going to do is I'm going to accept the officer's visual estimation, because I think that's where he was strong enough, strongest in his testimony. And his visual estimation . . . was that he believed [Mr. Jenney] was traveling at 70 miles an hour." This Court has held that a conviction may be based solely on an "officer's testimony that he observed [a] defendant traveling in excess of the posted speed limit." State v. Wilson, 9th Dist. No. 95CA006285, 1996 WL 668993 at *1 (Nov. 20, 1996) (citingCity of Cincinnati v. Dowling, 36 Ohio App. 3d 198, 200 (1987);Village of Kirtland Hills v. Logan, 21 Ohio App. 3d 67, 69 (1984)). While Mr. Jenney has asked this Court to reconsider its conclusion that a visual estimate by a law enforcement officer is sufficient to support a speeding conviction, this Court declines his invitation. Mr. Jenney's second assignment of error is overruled.
 MANIFEST WEIGHT {¶ 10} Mr. Jenney's third assignment of error is that his conviction is against the manifest weight of the evidence. When a defendant argues that his conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten, 33 Ohio App. 3d 339, 340 (1986). *Page 6 
 {¶ 11} Mr. Jenney has argued that Officer Santimarino's testimony was not credible because he gave inconsistent answers about how fast the radar device said he was traveling. Officer Santimarino initially testified that the device clocked him traveling "at 73 mile[s] per hour." He later said that the radar device clocked him traveling "at a speed of 82 mile[s] per hour." Shortly thereafter, he said that the device "displayed a speed of . . . 83 [miles per hour]." When the prosecutor asked Officer Santimarino whether Mr. Jenney's speed was 82 or 83 miles per hour, the officer asserted that he had made a mistake and that it was 82 miles per hour. He then indicated that it was what was "written down on the citation." On the citation, Officer Santimarino had written 79 miles per hour.
 {¶ 12} On cross-examination, Officer Santimarino repeated that the radar device had clocked Mr. Jenney traveling at 82 miles per hour. He said that he wrote 79 miles per hour on the traffic citation as a courtesy to Mr. Jenney so that Mr. Jenney could avoid a mandatory court appearance. He said that, on the ticket, he had made a small note indicating "the actual speed that [Mr. Jenney] was traveling." When he read his note, he said that Mr. Jenney's speed had been 83 miles per hour.
 {¶ 13} Mr. Jenney has also argued that Officer Santimarino was inconsistent about the number of times he had visually estimated the speed of vehicles during his training. The prosecutor asked Officer Santimarino: "And so when you were in this training, how many times did you practice making a visual estimation of a vehicle?" Officer Santimarino answered: "Probably hundreds of times in the training." After Mr. Jenney noted that Officer Santimarino's answer seemed high, the court asked him: "When you were being trained on the visual estimation technique . . . how many visual estimations did you do before you were adjudged to be certified?" Officer Santamarino replied: "Probably five to ten." *Page 7 
 {¶ 14} Mr. Jenney has further argued that no weight should be given to Officer Santimarino's visual estimate because of how much different it was from what the radar device calculated. Mr. Jenney has noted that Officer Santimarino's estimate was more than 10 miles per hour different than what the radar device indicated. He, therefore, has argued that, even if Officer Santimarino was trained in visually estimating speeds, he miscalculated on this occasion.
 {¶ 15} While Officer Santimarino was inconsistent about how fast the radar device said Mr. Jenney was traveling, the municipal court relied on the officer's visual estimate of Mr. Jenney's speed, which it found credible. In addition, Officer Santimarino's answers about the number of times he visually estimated the speed of vehicles are reconcilable. His first answer referred to the number of estimates he made during the course of his training. His second answer referred to the number of estimates he had to make during his certification test. It is logical that Officer Santimarino would practice visually estimating the speed of vehicles many times to ensure that he got the ones during his certification test correct. Furthermore, although Officer Santimarino's visual estimate was different than what the radar device calculated, Mr. Jenney has established that it is unknown whether Officer Santimarino was properly certified to operate the device. Mr. Jenney cannot reasonably argue that the device's reading is not reliable enough to support his conviction because the City failed to lay a proper foundation for its admission but is reliable enough to impeach the officer's ability to do a visual estimation.
 {¶ 16} The municipal court did not lose its way and create a manifest miscarriage of justice by accepting Officer Santimarino's testimony that Mr. Jenney was traveling faster than the posted speed limit. Mr. Jenney's third assignment of error is overruled. *Page 8 
 CONCLUSION {¶ 17} The municipal court properly allowed the City to amend the traffic citation. Mr. Jenney's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. The judgment of the Barberton Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to appellant.
CLAIR E. DICKINSON FOR THE COURT
MOORE, P. J. CONCURS *Page 9