[Cite as *State v. Everett*, 2009-Ohio-6714.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY


STATE OF OHIO,                                   CASE NO. 16-09-10

   PLAINTIFF-APPELLEE,

 v.

JEREMY M. EVERETT,                              O P I N I O N

   DEFENDANT-APPELLANT.


Appeal from Upper Sandusky Municipal Court
Trial Court No. TRD-09-725

Judgment Reversed and Cause Remanded

Date of Decision:  December 21, 2009


APPEARANCES:

   *Jeremy M. Everett* Appellant

   *Richard A. Grafmiller* for Appellee

**WILLAMOWSKI, J.,**

{¶1} Defendant-Appellant, Jeremy M. Everett ("Everett") appeals the judgment of the Upper Sandusky Municipal Court finding Everett guilty of speeding in violation of R.C. 4511.21(D)(2). On appeal, Everett asserts that the trial court erred in admitting evidence obtained from the moving radar unit. For the reasons set forth below, the judgment is reversed.

{¶2} On February 27, 2009, at approximately 4:58 p.m., Everett was driving eastbound on State Route 15 in Ridge Township. Ohio State Highway Patrol Trooper Todd A. Donnell was traveling westbound on State Route 15, a four lane, divided highway, in his marked patrol car. Trooper Donnell observed Everett pulling away from other traffic and activated his Python II radar device, which indicated Everett was traveling at 81 miles per hour. Trooper Donnell did a U-turn, turned on his overhead lights, and initiated a traffic stop. Trooper Donnell cited Everett for driving 81 miles per hour in a 65 miles per hour zone.

{¶3} Everett entered a plea of not guilty and a bench trial was held on April 13, 2009. At the trial, Trooper Donnell testified that he activated the radar to confirm that Everett was traveling in excess of his "visual estimation" of 80 miles an hour. The trooper testified that the radar unit was in good working order, that it was maintained by technicians, and that he had calibrated it with tuning forks earlier in the day and right after Everett's traffic stop. Trooper Donnell further

testified that he had been trained in the use of radar and that he had been issued an operator's certificate of training. The trial court stated that it had taken judicial notice on the Doppler principle, which radar uses.

{¶4} Everett, who represented himself, questioned Trooper Donnell about: his familiarity and understanding of various aspects of the operations of the radar unit; the extent of his training; his understanding of the unit's operating parameters and potential shortcomings; the methods used to maintain and calibrate the radar unit; whether the trooper had maintained visual contact and stopped the correct vehicle; and, whether he understood how the unit might be affected by the high humidity that existed that day. Everett also questioned whether the trial court's judicial notice as to the operation of radar applied to this particular Python II model.

{¶5} Everett's Criminal Rule 29 motion for acquittal was denied, and the trial court found Everett guilty of traveling 81 miles per hour in a 65 miles per hour zone in violation of R.C. 4511.21(D)(2). The trial court ordered Everett to pay a $25.00 fine, court costs of $127.50, and assigned two points to his driving record. It is from this judgment that Everett appeals, presenting the following three assignments of error for our review.

**First Assignment of Error**

**The trial court erred in accepting Judicial Notice of the speed measuring device of the MHP Industries, Inc.'s Python Series II**

**moving radar unit without any expert witness testimony presented at the trial to its construction, accuracy and reliability, and without the trial court previously hearing any expert witness testimony for the device to its construction, accuracy and reliability, nor a superior court in the State of Ohio previously hearing or accepting any expert witness testimony for the device to its construction, accuracy and reliability.**

### Second Assignment of Error

**The trial court erred in admitting evidence when the State of Ohio failed in the trial court to properly lay the foundation for the particular moving radar device's accuracy and reliability, and therefore there was insufficient evidence to convict the defendant of speeding.**

### Third Assignment of Error

**The trial court erred in admitting evidence when the State of Ohio failed in the trial court to properly lay the foundation to prove the MPH Industries Inc.'s Python Series II moving radar device was used in accordance with its owner's operators manual by the police officer, and therefore there was insufficient evidence to convict the defendant of speeding.**

{¶6} More than fifty years ago, the Ohio Supreme Court confirmed that the reliability of the scientific principles underlying the use of stationary radar may be established without the need for expert testimony. *East Cleveland v. Ferell* (1958), 168 Ohio St. 298, 154 N.E.2d 630, syllabus. However, the MPH Python II model, which was used to clock Everett's speed, is a moving radar device. To date, the Ohio Supreme Court has not addressed the standards for the admissibility of evidence from moving radar devices. See *Cleveland v. Tisdale*, 8th Dist. No. 89877, 2008-Ohio-2807, ¶¶7-18, 24. In order to convict a person for speeding

-4-

using a moving radar device, the state must prove and the record must contain (1) expert testimony of the construction of the device and its method of operation in determining the speed of the approaching vehicle, (2) evidence that the device was in good condition for accurate work, and (3) evidence that the officer using the device is one qualified for its correct use by training and experience. *State v. Wilcox* (1974), 40 Ohio App.2d 380, 386, 319 N.E.2d 615. A court may satisfy the first prong by hearing expert testimony or by taking judicial notice.[1] *State v. Yaun*, 3d Dist. No. 8-07-22, 2008-Ohio-1902, ¶12; *City of Cincinnati v. Levine*, 158 Ohio App.3d 657, 2004-Ohio-5992, 658 821 N.E.2d 613, ¶10. Regardless as to whether the radar unit is stationary or moving, or what method the state uses to satisfy the first evidentiary prong, the state must always prove the second and third elements concerning the accuracy of the particular speed meter involved and the qualifications of the person using it. *Ferell,* supra, 68 Ohio St. at 303; *State v. Helke*, 3d Dist. No. 8-07-04, 2007-Ohio-5483, ¶7.

{¶7} We will begin by addressing Everett's third assignment of error because it is dispositive of the matter. This assignment of error argues that the city failed to properly lay the foundation for Trooper Donnell's training and ability to

---

[1] Judicial notice establishing the reliability of a speed-measuring device to satisfy the first prong can be accomplished by (1) a reported municipal court decision, (2) a reported or unreported case from the appellate court, or (3) the previous consideration of expert testimony about a specific device where the trial court notes it on the record. *City of Cincinnati v. Levine,* supra. But see, *Cleveland v. Tisdale*, stating that "we believe that expert testimony is no longer required to establish the general reliability of radar or laser devices that are used to determine speed." 2008-Ohio-2807, at ¶18.

properly operate the Python II radar unit, and therefore, there was insufficient evidence to convict him of speeding.

{¶8} A defendant is entitled to acquittal on a charge against him under Crim.R. 29(A) if the evidence is insufficient to sustain a conviction. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *Helke*, supra, at ¶5. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced an average juror of the defendant's guilt beyond a reasonable doubt. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶9} In most cases, an officer is able to establish that he or she is qualified to operate a particular radar model by testifying as to his or her training and experience on that radar unit and by providing a certification for the training. See, e.g., *State v. Kirkland* (Mar. 2, 1988), Logan App. No. 8-97-22, 1998 WL 126849 (where the patrolman testified that he was certified to use the K-55 radar unit, and the record contained a copy of his certificate). Several appellate districts have held that a conviction for speeding based solely upon radar will not be upheld where the operator has failed to submit a certificate or a description of the radar operator's training. *Helke,* supra, 2007-Ohio-5483, at ¶9 (because the city did not show the sergeant's qualifications and experience, any evidence concerning the radar device's readout should have been excluded); *State v. Brown*, 9th Dist.

No.02CA0034-M, 2002-Ohio-6463, ¶12 (explaining that the deputy's testimony that he was trained on the specific K-55 radar unit on two separate occasions, absent a certificate of training, was insufficient to demonstrate that he was qualified to operate the radar unit); *Barberton v. Jenney*, 9th Dist. No. 24423, 2009-Ohio-1985, ¶8 (where the officer did not present any evidence beyond his testimony that he was certified to operate the device, there was insufficient evidence to establish that he was a qualified operator).

{¶10} In this case, Trooper Donnell testified that he initially received training in the Patrol Academy in a class for radar, and then every year he was required to have additional training and to take a quiz on the radar. He stated that his training was updated every year, with the last update in May of 2008. Trooper Donnell's operator's certificate of training was admitted into evidence.

{¶11} A review of the record shows that it contained a copy of Trooper Donnell's Operator's Certificate of Training for "electronic speed measuring devices," which was issued in 1994. On the back of the certificate, there were signed updates listing his training certification for the years 2003 through 2007. His last certification update was May 9, 2007, not in May of 2008, as Trooper Donnell had testified. Moreover, the instruments listed on the certification showed training for the "ESMD" in 2003 and 2004, and training for the "K55 Python" and the "LTI Ultralyte" in 2005, 2006, and 2007. The certification did not list any training for the Python II, nor did Trooper's Donnell's testimony ever

state that he received any specific training on the Python II. During cross-examination, Trooper Donnell was not able to answer several questions concerning the parameters of the Python II. When asked if he had ever read the manual for the Python II, Trooper Donnell responded that he had "briefly looked through one" two or three years ago.

{¶12} Based on the above, we do not find that the city provided sufficient evidence to prove that Trooper Donnell was trained and qualified to operate the Python II radar unit. Appellant's third assignment of error is sustained. Because the city did not prove Trooper Donnell's qualifications to operate the radar, any evidence concerning the Python II radar device's readout should have been excluded.

{¶13} However, many appellate courts have affirmed speeding convictions based upon the officer's testimony that the defendant was speeding, even when the readout from the radar device had been excluded. See, e.g., *Barberton v. Jenney*, supra. Usually, the officer will provide a definite opinion as to how fast the offender's vehicle was traveling and/or produce in-depth testimony concerning the officer's specific training and expertise in visually estimating the speed of a vehicle. See *Helke*, 2007-Ohio-5483, at ¶¶10-11.

{¶14} This Court recently upheld a speeding conviction without the need for admission of the radar-related evidence. See *State v. Harris*, 3d Dist. No. 9-99-03, 2009-Ohio-2616. In *Harris*, the defendant admitted that he was going

"about 65" in a 55 miles per hour zone in addition to the trooper's testimony that he visually estimated the defendant's speed as approximately 70 miles per hour. Id. at ¶12. In support of the accuracy of this visual determination, the trooper testified that he was trained to visually detect the speed of a vehicle within four miles of its actual speed. Id. at ¶11. He further testified that he was certified in determining the speed of a vehicle based upon visual observation, and that his certification in this area was current. Id. And finally, the radar's specific reading of 72 miles per hour was not essential to the conviction because the defendant was convicted only of the "general offense of speeding" and not of violating any specific speed limit by a particular number of miles per hour. Id. at ¶13.

{¶15} In the case before us now, Trooper Donnell provides only a brief mention of his "visual estimation" of Everett's speed before he activated the radar:

> **Q.     Okay. When you first saw him moving away, was there anything – did you do anything at that point?**
>
> **A.     At that point, I did activate [sic] a radar to confirm the speed of in excess of 80 miles an hour that I first perceived on the Defendant.**
>
> **Q.     Okay. When you first had your initial observation, did you make any note mentally or otherwise or determination as to what his speed was without the use of any mechanical device?**
>
> **A.     Correct. I originally had a visualized summation that he was in excess of 80 miles an hour.**
>
> **\*\*\***
>
> **Q.     And after that visual estimation, you did what then?**

**A.     After the visual estimation, then I activated the radar.**

(Trial Tr. pp. 7-8).

{¶16} Trooper Donnell's description of his "perception" and "visualized summation" of his estimation of Everett's speed is not very definite or convincing. Compare *State v. Westerbeck* (June 19, 1987), 3d Dist. No. 17-86-18, 1987 WL 13063 (where the court found the direct testimony as to speeding too vague for a finding of guilt); *Harris*, 2009-Ohio-2616, at ¶13, fn.3.   More importantly, Trooper Donnell did not provide any testimony or evidence concerning his ability, or experience in accurately estimating the speed of a moving vehicle, nor did he testify that he had received any training in visually estimating speeds.

{¶17} In many cases where courts have affirmed a speeding conviction based upon the officer's visual determination, there is often additional evidence verifying the officer's specific training and experience in being able to accurately estimate a vehicle's speed without relying upon radar. See, e.g., *State v. Brown*, 9th Dist. No.02CA0034-M, 2002-Ohio-6463, ¶20 (where the deputy testified he received training to estimate the speed of moving vehicles and was required to attain a degree of accuracy of plus or minus five miles an hour per twenty vehicles); *Barberton v. Jenney*, 2009-Ohio-1985, at ¶13 (the officer received training and certification where he practiced visual estimation of a vehicle hundreds of time); *State v. Wilson*, 6th Dist. No. F-04-028, 2005-Ohio-2496, ¶17

(where the trooper testified he had forty hours training in visually estimating the speed of vehicles, and his estimates were verified with radar).

{¶18} There was nothing in the record that would substantiate Trooper Donnell's ability to accurately estimate the speed of a moving automobile traveling in the opposite direction of his patrol car. "[T]he mere educated guess of the arresting officer as to the speed of a vehicle is insufficient to overcome the presumption of innocence and the burden of proof beyond a reasonable doubt for conviction." *Cleveland v. Wilson*, 8th Dist. No. 87047, 2006-Ohio-1947, ¶9. We do not find that the record contains sufficient evidence of Trooper Donnell's ability to accurately estimate the speed of a moving vehicle to sustain Everett's conviction for speeding 81 miles per hour based upon his visual estimation.

{¶19} For the reasons stated above, the judgment of the Upper Sandusky Municipal Court is reversed and the matter is remanded with instruction for the trial court to discharge appellant.

***Judgment Reversed and Cause Remanded***

**ROGERS, J., concurs in Judgment Only.**

**SHAW, J., dissents.**

{¶20} Because I believe the majority has fundamentally misconstrued the testimony in this case, and in particular, assigned improper weight to a series of

irrelevant questions and unsubstantiated claims posed by the defendant to the trooper at trial, I respectfully dissent.

{¶21} Contrary to the assertions of the majority, the trooper in this case did specifically testify to an independent visual estimate of the defendant's speed "in excess of 80 miles per hour" (Transcript at 7)  - and the trooper did specifically testify to his qualifications and training on the "Python Series 2 radar" when he was asked to describe his experience "specifically with this unit and other radar units" and in response stated that his experience "started with a K-55 and proceeded up to the Series 2 which I have now". (Transcript at 11 and 17.)  Later, in describing the audible tone distortion that signifies "shadowing" and other radar problems, the trooper again states that his testimony is applicable "specifically on the Series 2 radar unit." (Transcript at 35.) Whether the notations on the back of the certificate showed it or not, the trooper further testified in person that his most recent operators certificate update was in "May of '08." (Transcript at 18.)

{¶22} The majority makes much of the fact that the trooper was not familiar with certain questions about the radar raised by the defendant on cross-examination. However, there was no showing by the defendant or anyone else that any of these questions had any bearing whatsoever on the accuracy or reliability of the radar operated by the trooper on the date of the offense - beyond the mere suggestion of the defendant and as allegedly suggested in some of the unsubstantiated "literature" he submitted to the court. (See transcript at 20-29.)

**{¶23}** In particular, the defendant made absolutely no showing whatsoever that the questions about "humidity parameters" posed to the trooper on cross-examination, had any basis in fact or science for impacting the accuracy or reliability of the Python II radar in general - or otherwise impacted the trooper's use of that radar to accurately document the defendant's speeding on the date of the offense.

**{¶24}** Under these circumstances, I believe it is highly inappropriate for the appellate court to conclude that the trooper was not qualified or properly trained in the operation of this radar simply because he was not familiar with the allegations of the defendant regarding "humidity parameters" - when there is no proper showing in the record by anyone that "humidity parameters" have any bearing whatsoever on the use of this equipment.

**{¶25}** In sum, none of the questions or claims posed by the defendant were properly established in evidence as having any bearing on the accuracy of the equipment used by the trooper to confirm his visual observation of the defendant as travelling at 81 miles per hour on the date of the offense. In contrast, every indication by the trooper was that the redundancy checks and techniques, calibration procedures, and operation of this radar unit all confirmed that a speed of 81 miles per hour was accurately registered on a properly working radar unit, operated by a trained and qualified trooper.

**{¶26}** For these reasons, I believe the trial court was well within its prerogative to reject the claims, comments and questions of the defendant and accept the testimony of the trooper with regard to both his visual observations and the use of the radar as accurate evidence in determining the defendant's speed in this case. I would affirm the judgment of the trial court.

**/jnc**