[Cite as *In re T.K.*, 2020-Ohio-3084.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

IN RE:

       T.K.,

ALLEGED JUVENILE TRAFFIC
OFFENDER.

CASE NO. 5-19-25

O P I N I O N

Appeal from Hancock County Common Pleas Court
Juvenile Division
Trial Court No. 20191079

Judgment Affirmed

Date of Decision: May 26, 2020

APPEARANCES:

    *Timothy J. Hoover* for Appellant

    *Heather M. Pendleton* for Appellee

**PRESTON, J.**

{¶1} Juvenile-appellant, T.K. appeals the July 11, 2019 judgment of adjudication and disposition of the Hancock County Court of Common Pleas, Juvenile Division. For the reasons that follow, we affirm.

{¶2} On March 28, 2019, Trooper Zachary Gossard ("Trooper Gossard") of the Ohio State Highway Patrol issued a citation to T.K. for operating a motor vehicle at 75 miles per hour in a 35 mile-per-hour zone in violation of R.C. 4511.21(C). (Doc. Nos. 1, 2). On April 8, 2019, T.K. entered a written denial to the allegation in the citation. (Doc. No. 3). The matter came on for trial on July 9, 2019. (Doc. No. 11). At the conclusion of the trial, the trial court found that T.K. was a juvenile traffic offender as defined by R.C. 2152.02(N) due to her violation of R.C. 4511.21. (*Id.*). The trial court proceeded directly to disposition and suspended T.K.'s driver's license for a period of two years. (*Id.*). The trial court also imposed a fine and ordered that T.K. attend a driving training course. (*Id.*). On July 11, 2019, the trial court filed its judgment entry of adjudication and disposition. (*Id.*).

{¶3} On July 25, 2019, T.K. filed her notice of appeal. (Doc. No. 12). She raises one assignment of error.

**Assignment of Error**

**The trial court's verdict was against the manifest weight of the evidence.**

{¶4} In her assignment of error, T.K. argues that the trial court's verdict is against the manifest weight of the evidence. Specifically, T.K. argues that Trooper Gossard was an incompetent witness because he failed to testify that he was driving a marked patrol vehicle and wearing a law enforcement uniform at the time of the traffic stop. (Appellant's Brief at 7-8). T.K. also argues that the State failed to prove that Trooper Gossard's radar instrument was reliable and that he was trained to use it. (*Id.* at 8-9).

{¶5} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's

judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

**{¶6}** The trial court found that T.K. violated R.C. 4511.21(C), which provides, in pertinent part, as follows:

It is prima-facie unlawful for any person to exceed any of the speed limitations in divisions (B)(1)(a), (2), (3), (4), (6), (7), (8), and (9) of this section, or any declared or established pursuant to this section by the director or local authorities and it is unlawful for any person to exceed any of the speed limitations in division (D) of this section.

R.C. 4511.21(B) provides that "[i]t is prima-facie lawful, in the absence of a lower limit declared or established * * *, for the operator of a motor vehicle * * * to operate the same at a speed not exceeding" "[t]hirty-five miles per hour on all state routes or through highways within municipal corporations outside business districts * * *." R.C. 4511.21(B)(3).

**{¶7}** In this case, the evidence overwhelmingly demonstrates that T.K. operated her motor vehicle in violation of R.C. 4511.21(C). The only witness to testify at trial was Trooper Gossard. (July 9, 2019 Tr. at 6). Trooper Gossard testified that on March 28, 2019, he was on duty patrolling the public roads in Findlay, Ohio and monitoring traffic on Broad Avenue near County Road 95. (*Id.* at 6-7). The area is a residential area near a church, and the speed limit in the area

-4-

is 35 miles per hour. (*Id.* at 9-10). Trooper Gossard stated that while he was watching traffic, he observed a Jeep traveling toward him at a high rate of speed. (*Id.* at 7). Trooper Gossard visually estimated that the Jeep was traveling at a speed of 75 miles per hour. (*Id.*). Trooper Gossard testified that he then activated his front radar instrument, which revealed a speed reading of 74 to 75 miles per hour for approximately four seconds. (*Id.* at 7, 10).

{¶8} Trooper Gossard stated that when the Jeep saw him, he observed the vehicle "dip forward" as the driver hit the brakes. (*Id.* at 7). Trooper Gossard then pulled in behind the Jeep and initiated a traffic stop of the vehicle. (*Id.*). After the Jeep stopped, Trooper Gossard approached the vehicle and spoke to the driver, who Trooper Gossard identified as T.K. (*Id.* at 7-8). When Trooper Gossard asked T.K. if she knew the reason he stopped her vehicle, T.K. admitted to him that she knew that she was speeding. (*Id.* at 8-9). Trooper Gossard testified that T.K. stated that she knew that the speed limit in the area was 35 miles per hour. (*Id.* at 9). Trooper Gossard then issued a citation to T.K. for exceeding the speed limit. (*Id.*). Trooper Gossard identified State's Exhibit 1 as the agency copy of the citation he wrote for T.K. on March 28, 2019. (*Id.*). (*See* State's Ex. 1).

{¶9} Trooper Gossard testified that as part of his training in law enforcement, he is trained on the proper use of a radar instrument. (July 9, 2019 Tr. at 6). Trooper Gossard's training also included training on checking the calibration of a radar

device. (*Id.*). He further testified that the radar instrument he was using was Radar 9k. (*Id.* at 10). Trooper Gossard stated that on the day of the incident the radar instrument was confidence checked at 2:00 p.m. and 6:30 p.m. and that he issued the citation at 6:10 p.m. (*Id.* at 10-11).

{¶10} On cross-examination, Trooper Gossard clarified that he checked T.K.'s rate of speed visually and then checked her speed with his radar instrument. (*Id.* at 12). He further testified that, as part of his training, he must be able to accurately identify an individual's speed within three miles per hour to be certified for electronic speed measurement devices. (*Id.*). Trooper Gossard testified that when he estimated T.K.'s speed, he knew she was going fast because he has "done it so much." (*Id.* at 12-13). Trooper Gossard testified that, through his training and experience, he knew "about how fast a 35-mile-an-hour vehicle should be looking." (*Id.* at 13). Trooper Gossard testified that he observed T.K.'s relative speed to the other vehicles and other objects around her. (*Id.*). He stated that he observed T.K.'s vehicle pull away "very fast" from the vehicle behind her. (*Id.*). Trooper Gossard testified that he also checked the speed of T.K.'s vehicle using his radar instrument. (*Id.* at 15). Trooper Gossard briefly described how the radar instrument works, and stated that he is "not an expert on" the internal calculations that the radar unit performs. (*Id.*).

{¶11} Trooper Gossard testified that Broad Avenue, the street that he was patrolling, runs alongside Interstate 75. (*Id.* at 15-16). Trooper Gossard stated that the speed limit on Interstate 75, at the time, was 55 miles per hour due to construction. (*Id.* at 16). Trooper Gossard stated that he did not direct his radar toward Interstate 75 and reasoned that he could not have inadvertently checked the speed on Interstate 75 because a sound barrier wall was present that would have blocked his radar. (*Id.* at 17).

{¶12} Trooper Gossard testified that electronic technicians calibrate the radar units. (*Id.* at 19). Trooper Gossard further explained that he is "not an expert" on radar calibrations. (*Id.* at 20). However, Trooper Gossard testified that patrol officers, including himself, perform confidence checks on the radar units using tuning forks. (*Id.* at 19-20).

{¶13} On redirect examination, Trooper Gossard testified that he completed his "Electronic Speed Measurement Device Certification" with the State of Ohio from August 11-15, 2014. (*Id.* at 22). Trooper Gossard identified State's Exhibit 2 as a copy of the certificate he received upon completion of the training. (*Id.* at 22-23). (*See* State's Ex. 2). Trooper Gossard also identified State's Exhibit 3 as the "Radar Tuning Fork Frequency Measuring Report" for his radar unit. (July 9, 2019 Tr. at 23). (*See* State's Ex. 3). Trooper Gossard identified State's Exhibit 4 as the Radar Speed Measuring Device Certification for the radar unit in his patrol vehicle.

(July 9, 2019 Tr. at 23). (*See* State's Ex. 4). Trooper Gossard testified that nothing in the report indicates a radar unit malfunction, and he noted that all of the results indicate that the radar "pass[ed]." (July 9, 2019 Tr. at 23). (*See* State's Ex. 4).

{¶14} Thereafter, the State moved to admit its exhibits and rested. (July 9, 2019 Tr. at 24-25). The State's exhibits were admitted without objection. (*Id.* at 24). T.K. rested without presenting evidence. (*Id.* at 25).

{¶15} In support of her argument that the weight of the evidence does not support that she violated R.C. 4511.21(C), T.K. argues that Trooper Gossard was an incompetent witness because the record "is devoid of any indication" that Trooper Gossard stopped T.K. while he was in a marked patrol vehicle or wearing any particular uniform, such as the "uniform of the day." (Appellant's Brief at 8).

{¶16} R.C. 4549.14 provides the necessary requirements for a law enforcement officer to testify:

> An officer arresting, or participating or assisting in the arrest of, a
> person charged with violating the motor vehicle or traffic laws of this
> state, provided the offense is punishable as a misdemeanor, such
> officer being on duty exclusively or for the main purpose of enforcing
> such laws, is incompetent to testify as a witness in any prosecution
> against such arrested person if such officer at the time of the arrest

was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code.

{¶17} Likewise, Evid.R. 601(C) provides that "[a]n officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute" is not competent to be a witness.

{¶18} R.C. 4549.13 provides:

Any motor vehicle used by a member of the state highway patrol or by any peace officer, while said officer is on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, shall be marked in some distinctive manner or color and shall be equipped with, but need not necessarily have in operation at all times, at least one flashing, oscillating, or rotating colored light mounted outside on top of the vehicle.

{¶19} "[T]he general rule is that * * * an adult witness is presumed competent to testify and therefore the burden of demonstrating the incompetency of

a traffic officer is on the accused." *State v. Rau*, 65 Ohio App.3d 478, 480 (3d Dist.1989).

{¶20} Here, the State did not provide any explicit testimony that Trooper Gossard was in a marked patrol vehicle or wearing the uniform of the day. However, T.K. did not provide any evidence suggesting that Trooper Gossard or any other law enforcement officer arrested her during the encounter or any other evidence of incompetency sufficient to raise the issue of Trooper Gossard's competency at trial. Thus, T.K. did not meet her burden of demonstrating that Trooper Gossard was not competent to testify. *See Rau* at 481.

{¶21} T.K. next argues the weight of the evidence does not support that she violated R.C. 4511.21(C) because the State failed to prove that Trooper Gossard's radar unit was reliable and that he was qualified to use it.

{¶22} "To prove a case of speeding based on the reading of a radar gun, the [State] is required to show the accuracy and reliability of the device; that the unit was in good condition for accurate work; and the operator's qualifications by training and experience to use the device." *State v. Helke*, 3d Dist. Logan No. 8-07-04, 2007-Ohio-5483, ¶ 7, citing *State v. Kirkland*, 3d Dist. Logan No. 8-97-22, 1998 WL 126849 (Mar. 2, 1998). *See State v. Zhovner*, 3d Dist. Auglaize No. 2-12-13, 2013-Ohio-749, ¶ 15 ("To convict an individual of speeding based on a laser device, 'there must be evidence introduced at trial that the device is scientifically

reliable.'"), quoting *State v. Starks*, 196 Ohio App.3d 589, 2011-Ohio-2344, ¶ 21 (12th Dist.), citing *State v. Palmer*, 1st Dist. Hamilton No. C-050750, 2006-Ohio-5456, ¶ 10. "The scientific reliability of a particular speed-measuring device can be established via expert testimony or judicial notice." *Zhovner* at ¶ 16, citing *State v. Everett*, 3d Dist. Wyandot No. 16-09-10, 2009-Ohio-6714, ¶ 6.

{¶23} This court has also held that visual observations of speed standing alone are not sufficient to support a speeding conviction. *Helke* at ¶ 10, citing *State v. Westerbeck*, 3d Dist. Shelby No. 17-86-18, 1987 WL 13063, *3 (June 19, 1987). However, this court has acknowledged that courts have affirmed a speeding conviction based on a law enforcement officer's visual determination of speed if there is "additional evidence verifying the officer's scientific training and experience in being able to accurately estimate a vehicle's speed without relying upon radar." *Everett* at ¶ 17.

{¶24} In the present case, Trooper Gossard testified that he confidence checked his radar unit at 2:00 p.m. and 6:30 p.m. and that the citation was issued at 6:10 p.m. Additionally, Trooper Gossard provided the radar certification for his unit as well as the radar tuning fork frequency measuring report. However, the trial court did not take judicial notice of the specific reliability of Trooper Gossard's radar unit. Additionally, Trooper Gossard, the State's only witness, admitted on the

stand that he was "not an expert" on radar units and calculations. *See Zhovner* at ¶ 16.

**{¶25}** However, Trooper Gossard testified that he first visually estimated the speed of T.K.'s vehicle and then confirmed the vehicle's speed with his radar unit. Trooper Gossard testified in some detail regarding his training with electronic speed measurement devices. Specifically, he testified that as part of his training, he had to be able to identify a vehicle's speed within three miles per hour. The State also provided the certificate demonstrating that Trooper Gossard was certified for electronic speed measurement devices. Thus, the State presented additional evidence verifying Trooper Gossard's specific training and experience in being able to accurately determine a vehicle's speed without relying on a radar instrument. *State v. Brown*, 9th Dist. Medina No. 02CA0034-M, 2002-Ohio-6463, ¶ 20, 22 (holding that appellant's speeding conviction is not against the manifest weight of the evidence where the conviction was "not based solely on the evidence derived from the radar unit" and the law enforcement officer testified that he visually estimated appellant's speed and had completed training that required him to attain a degree of accuracy of "plus or minus five miles an hour per [twenty] vehicles" for visual estimations of speed). *See also*, *Barberton v. Jenney*, 9th Dist. Summit No. 24423, 2009-Ohio-1985, ¶ 13-16. Trooper Gossard's observation of T.K. traveling in excess of 40 miles per hour over the speed limit in a residential neighborhood,

coupled with testimony that T.K. admitted that she knew that she was exceeding the speed limit further weigh in support of T.K.'s adjudication for operating a motor vehicle above the posted speed limit. Thus, after weighing the evidence and evaluating the credibility of the witness, with appropriate deference to the trier of fact's credibility determination, we cannot conclude that the trier of fact clearly lost its way and created a manifest injustice by determining that T.K. violated R.C. 4511.21(C) and concluding that she is a juvenile traffic offender.

{¶26} Accordingly, T.K.'s assignment of error is overruled.

{¶27} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and ZIMMERMAN, J., concur.**

**/jlr**